**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHARON CARR, individually and as
Administratrix of the Estate of
Joshua Morgan, deceased,
            *Plaintiff-Appellant,*

            v.

V. S. DEEDS, individually and as an
agent of the State of West Virginia;
HOWARD E. HILL, JR., as
Superintendent of the West Virginia
State Police, in his official capacity;
STATE OF WEST VIRGINIA,
            *Defendants-Appellees,*

            and

T. D. BRADLEY, individually and as
an agent of the State of West
Virginia,
            *Defendant.*

No. 05-1472

SHARON CARR, individually and as
Administratrix of the Estate of
Joshua Morgan,

*Plaintiff-Appellant,*

and

JOSHUA MORGAN, Deceased,

*Plaintiff,*

v.

T. D. BRADLEY, individually and as
an agent of the State of West
Virginia; HOWARD E. HILL, JR., as
Superintendent of the West Virginia
State Police, in his official capacity;
STATE OF WEST VIRGINIA,

*Defendants-Appellees.*

No. 05-2186

Appeals from the United States District Court
for the Southern District of West Virginia, at Beckley.
David A. Faber, Chief District Judge;
R. Clarke VanDervort, Magistrate Judge.
(CA-03-543-5; CA-04-518)

Argued: May 23, 2006

Decided: July 12, 2006

Before TRAXLER and GREGORY, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Gregory and Senior Judge Hamilton joined.

**COUNSEL**

**ARGUED:** Paul Joseph Harris, Wheeling, West Virginia, for Appellant. Wendy Elizabeth Greve, PULLIN, FOWLER & FLANAGAN, P.L.L.C., Charleston, West Virginia, for Appellees. **ON BRIEF:** Rachel A. Martin, Wheeling, West Virginia, for Appellant. Gary E. Pullin, PULLIN, FOWLER & FLANAGAN, P.L.L.C., Charleston, West Virginia, for Appellees.

---

**OPINION**

TRAXLER, Circuit Judge:

Plaintiff Sharon Carr, individually and as administratrix of the estate of her son Joshua Morgan, brought this action under 42 U.S.C.A. § 1983 (West 2003), and various state law provisions, against the State of West Virginia, the Superintendent of the West Virginia State Police, and two of its troopers. Plaintiff's § 1983 claims allege that Trooper V.S. Deeds unconstitutionally employed excessive force against Morgan following Morgan's arrest on June 20, 2001, and that Trooper Deeds and Trooper T.D. Bradley unconstitutionally employed deadly force during an attempted arrest of Morgan on July 10, 2001. On appeal, plaintiff challenges the district court's orders excluding her independent expert, and granting summary judgment to defendants on the § 1983 claims. We affirm both orders.

I.

Because this is an appeal from the grant of summary judgment to the defendants, we review the facts in the light most favorable to the plaintiff. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

On June 20, 2001, Trooper Deeds and at least two other law enforcement officers arrested Morgan at the home of Dale Arbaugh pursuant to an outstanding arrest warrant for suspected arson of Arbaugh's home. Morgan was transported to the State Police Barracks in Lewisburg, and then to the Southern Regional Jail in Beck-

ley, by one or more of these officers. Upon his arrival at the Regional Jail, Morgan was medically evaluated and found to have a cut on his lip, also described as a "busted lip," J.A. 70, and an abrasion on his right flank or abdomen. No other injuries were noted, and there was no report or complaint of a physical altercation.

Morgan's mother, stepfather, and brother visited Morgan at the police station later that day. Morgan's mother testified that Morgan was bleeding from his mouth and had abrasions to his shoulder and rib area. Morgan's stepfather testified that Morgan had a swollen lip, "blood coming out of his mouth when he would spit," J.A. 236, and abrasions to his shoulders and abdomen area. Morgan's brother testified that Morgan had a swollen eye and "a couple [of] cuts and bruises." J.A. 242-43. None of the witnesses observed any use of force by any officer. However, they testified that, when Morgan was asked about the injuries, he either pointed to or verbally indicated that Deeds had inflicted them.

Two days later, after Morgan had been released from custody, he saw Dr. Craig Bookout at the Greenbrier Valley Medical Center emergency room. According to Dr. Bookout, Morgan had a small cut on his lip and abrasions to his right shoulder and elbows, which Morgan reported to be from "an altercation with a state police officer" on June 20. J.A. 200. Morgan also complained of pain in his ribs and a bruised temple, but indicated these were not the result of the altercation. No other injuries were noted. Dr. Bookout was given no information regarding the circumstances of the alleged altercation, nor was the identity of the officer revealed to him. Arbaugh, who had been present when Morgan was arrested, testified that he also saw Morgan after he was released from custody. He testified that Morgan had a black eye, a couple of "places" on the side of his face, and bruises on his arms and legs. Morgan filed no complaint with the West Virginia State Police for any alleged wrongful conduct by its officers.

On July 10, 2001, Morgan's mother completed an Application for Involuntary Custody for Mental Health Examination of her son in Greenbrier County, certifying that she had reason to believe Morgan was addicted to either alcohol or drugs and that his addiction was likely to cause serious harm to him or others. According to the certification, Morgan told her the day before "that he would take a bullet

in the head before he would go to jail." J.A. 91. At the time, there were at least two outstanding warrants for Morgan's arrest. The Greenbrier County Circuit Court issued an order for detention, directing the Greenbrier County Sheriff to take Morgan into custody for purposes of a probable cause hearing and mental health examination.

Alicia and Timothy Holliday were close friends of Morgan, and Morgan had been staying at their home in Monroe County for several weeks. When Timothy learned that there were outstanding warrants for Morgan's arrest, however, he asked Morgan to leave because he did not want his family involved. Morgan told Alicia that day or the day before that "he would kill himself or anyone who tried to take him down, including the police," J.A. 132, and told Timothy that "he didn't want to go back to jail and that he would do what it took not to go back." J.A. 135. They testified that Morgan left their home on July 10, in possession of a pistol and ammunition and smoking marijuana.

Later that day, the Greenbrier County Sheriff's office contacted Monroe County Sheriff Gerald Bland, advised him that Morgan was reportedly at the Holliday residence, and requested that Morgan be taken into custody pursuant to the outstanding warrants and commitment order. Deputy John Farmer and Deputy J.A. Greer were dispatched to the Holliday residence to apprehend Morgan, but he was not there. The deputies were aware that Morgan might be armed, and the Hollidays confirmed this fact.

Shortly after leaving the Holliday residence, Farmer received radio notification that Morgan's vehicle had been spotted nearby. While en route to the location, Farmer met Morgan's vehicle coming towards him. Farmer turned around and pursued the vehicle with lights and sirens, but Morgan did not stop. After traveling several miles, Morgan abruptly stopped his vehicle in the middle of the road, opened the door, and placed one foot on the pavement. Farmer ordered Morgan to get out of the vehicle. After approximately thirty seconds, Morgan stood outside the vehicle, but Farmer could not see Morgan's right hand. When Farmer ordered Morgan to place his hands on the back of the vehicle, Morgan fled on foot over an embankment. As Farmer was pursuing Morgan on foot, Morgan turned and fired at least two

shots. Farmer then lost sight of Morgan and returned to the road to call for assistance.

Sheriff Bland and Deputy Greer were the first to arrive at the scene. Troopers from at least three different detachments of the State Police, including Bradley and Deeds, also responded to the call for assistance and began taking positions to contain Morgan in the area. At about this time, the officers learned of a report that an armed man had attempted to stop a woman in the roadway. Assuming that Morgan was attempting to get a ride out of the area, Bradley, at that time still en route to the scene, began relaying instructions to other troopers to block roads out of the area and check vehicles.

Shortly after Bradley and Deeds arrived at the scene, two officers reported that they had spotted Morgan and relayed the location to the others. Deeds and Bradley, armed with a rifle and shotgun respectively, immediately proceeded to the location and began searching for him on foot. While searching, the troopers heard a noise and Bradley spotted Morgan approaching the officers in a crouched position with a pistol in his hand. Bradley ordered Morgan to drop the gun, but Morgan dropped to the ground instead and fired two or three rounds at the troopers. Bradley and Deeds returned fire and repeatedly ordered Morgan to drop his weapon. Morgan continued to fire at the troopers, and gunfire was again exchanged. After Bradley fired a shot that he believed hit Morgan and Morgan did not respond to verbal calls, Bradley and Deeds jointly approached Morgan and discovered that he was dead. The other officers were advised that the threat was over and the scene was immediately secured for investigation. An autopsy was subsequently performed by Dr. Zia Sabet, M.D., Deputy Chief Medical Examiner with the State of West Virginia. Dr. Sabet concluded that Morgan "died as a result of multiple (undetermined) shotgun wounds of the head, back, abdomen, and upper and lower extremities," and found "no evidence of close range firing on the skin." J.A. 191.

On July 16, 2003, plaintiff brought this action alleging two separate claims of excessive force under § 1983, in addition to several state law claims. Plaintiff alleged that Deeds unconstitutionally employed excessive force against Morgan by assaulting him after he was taken into custody on June 20, 2001. With regard to the July 10, 2001, inci-

dent, plaintiff alleged that Deeds and Bradley unconstitutionally employed deadly force against Morgan.

On June 21, 2004, after the close of discovery, defendants moved to exclude the testimony and opinions of plaintiff's expert, Dr. John T. Cooper, under Rule 37(c)(1) of the Federal Rules of Civil Procedure because plaintiff had failed to serve the expert disclosure required by Rule 26(a)(2)(B) and the district court's scheduling order.

On July 1, 2004, defendants also filed a motion for summary judgment. With regard to the June 20 arrest, defendants asserted that plaintiff had failed to produce sufficient evidence that Morgan was injured in an altercation with Deeds and, in the alternative, that the claim should be dismissed because Morgan's injuries were *de minimis*. With regard to the July 10 incident, defendants asserted that plaintiff had failed to produce sufficient evidence that Deeds and Bradley employed deadly force that was objectively unreasonable under the circumstances. In the alternative, defendants asserted that plaintiff's claim did not survive Morgan's death.

The district court granted defendants' motion to exclude plaintiff's expert and granted, by separate order, defendants' motion for summary judgment. The district court found that Deeds was entitled to qualified immunity from the assault claim because Morgan's injuries were *de minimis* and that the deadly force claim did not survive Morgan's death.[1]

---

[1]Bradley was dismissed from the case on May 5, 2004, for plaintiff's failure to properly serve him with the summons and complaint. Plaintiff has not appealed this order and Bradley is no longer a defendant. Defendants Howard E. Hill, Jr., sued only in his official capacity as the Superintendent of the West Virginia State Police, and the State of West Virginia were granted summary judgment on the § 1983 claims based upon Eleventh Amendment immunity, and plaintiff did not appeal the district court's grant of summary judgment on this basis. Having dismissed all federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims and they were dismissed without prejudice. Accordingly, while all defendants, with the exception of Bradley, remain parties on appeal, only the allegations of unlawful conduct by Deeds are at issue.

II.

We begin with plaintiff's appeal from the district court's order granting summary judgment on the deadly force claim brought under § 1983, and plaintiff's related appeal from the district court's order excluding plaintiff's expert witness under Rule 37(c)(1). We affirm the district court's order granting summary judgment to Deeds on the deadly force claim, although we do so based upon qualified immunity.[2] We also conclude that the district court did not abuse its discretion in excluding the plaintiff's expert witness.

A.

Under the doctrine of qualified immunity, police officers performing their discretionary duties "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because "[q]ualified immunity is an entitlement not to stand trial or face the other burdens of litigation . . . rather than a mere defense to liability," it is important to "resolv[e] immunity questions at the earliest possible stage in litigation." *Saucier*, 533 U.S. at 200-01 (internal quotation marks and citation omitted). When qualified immunity is asserted, the court must consider the requisites of the defense in the proper sequence. *See id.* at 200. We must first evaluate whether, viewing the facts in the light most favorable to the plaintiff, the officer has violated a constitutional right; if so, then we proceed to determine whether that right was clearly established at the time of the violation. *See id.* at 201.

We begin our analysis of an excessive force claim brought under § 1983 "by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). With regard to plaintiff's death claim, that constitutional right was Morgan's Fourth Amendment right to be free

---

[2]Because we conclude that Deeds is entitled to qualified immunity, we need not address the alternative claim that the action did not survive Morgan's death.

of arrests, investigatory stops, or other seizures effectuated by excessive force. *See id.* at 388.

A claim that a police officer used such excessive force during an arrest is analyzed under an "objective reasonableness" standard. An officer's actions are not excessive if they "are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id.* at 397. Determining the reasonableness of the challenged actions "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). Proper application of the test of reasonableness also "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "Because 'police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided." *Waterman v. Batton*, 393 F.3d 471, 476-77 (4th Cir. 2005) (quoting *Graham*, 490 U.S. at 397) (internal citation omitted).

"[T]he intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1,9 (1985). However, such deadly force may be employed "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* at 11. "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* at 11-12.

## B.

In this case, Morgan was the subject of at least two valid warrants for his arrest, as well an order for involuntary commitment initiated by his mother, certifying that he was addicted to either alcohol or

drugs and that this addiction was likely to cause serious harm to himself or others. The day before Morgan's death, Morgan told his mother "that he would take a bullet in the head before he would go to jail." J.A. 91. He also told the Hollidays that he would "kill himself or anyone who tried to take him down including the police," J.A. 132, and that he "would do what it took not to go back" to jail. J.A. 135. He left the Hollidays on the day of his death in possession of a gun and ammunition, and had been smoking marijuana. In addition, the officers had been advised that a man, armed with a handgun, had attempted to stop a woman driving a car on a nearby road. When Farmer stopped Morgan's vehicle, Morgan refused Farmer's command to place his hands in view, jumped from the vehicle, fired at least two rounds from his handgun, and fled into the woods. Morgan likewise refused orders by Deeds and Bradley to surrender, and fired several rounds at the troopers.

Under the circumstances, we have no trouble concluding, as a matter of law, that a reasonable officer could have believed that Morgan posed a significant threat of serious physical harm to them, their fellow officers, and any others who might encounter him during his flight. Accordingly, absent any evidence negating the threat, Deeds would clearly be entitled to qualified immunity for his use of deadly force.

## C.

Plaintiff does not directly dispute that Morgan fired upon the officers, or that Morgan posed a significant risk to himself and others when Farmer attempted to take him into custody. Rather, plaintiff alleges that Deeds and Bradley tracked Morgan down in the woods, disarmed or incapacitated Morgan, and then placed their pistols against Morgan's head and executed him.[3] Because the only evidence

---

[3]Plaintiff's complaint also sets forth a series of wholly unsubstantiated allegations regarding the supposed "motive" for this murder, and an allegation that Deeds deceived her into bringing the petition for involuntary commitment. Basically, plaintiff claims that state troopers had been dealing drugs, distributing alcoholic beverages to underage girls, and engaging in the sexual assault of underage girls, and that Morgan was arrested on June 20 and murdered on July 10 because he had discovered this

submitted in support of this allegation of an execution-style murder is contained in the reports of Dr. John Cooper, we turn now to plaintiff's appeal of the district court's order excluding Dr. Cooper as an expert witness. We review the district court's exclusion of plaintiff's expert witness for an abuse of discretion. *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003).

Rule 26(a)(2) of the Federal Rules of Civil Procedure imposes specific requirements for the disclosure of expert testimony during the discovery period. Rule 26(a)(2)(A) provides that each "party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2)(A). Rule 26(a)(2)(B), however, imposes additional requirements if the expert witness "is retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). For such witnesses, the disclosure must "be accompanied by a written report prepared and signed by the witness" which includes:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

wrongdoing and threatened to disclose it. Although the record on appeal contains testimony from several women regarding alleged wrongdoing on the part of some troopers, there is no testimony that Morgan was aware of such conduct, that Morgan made threats to expose it, or, for that matter, that Deeds or Bradley were involved in the alleged wrongful conduct. Plaintiff also failed to produce evidentiary support for her own allegation that Deeds deceived her.

Fed. R. Civ P. 26(a)(2)(B). The required disclosures must be made as directed by the court's scheduling order or, if none, no later than ninety days prior to the trial, and must be supplemented when required under Rule 26(e)(1). *See* Fed. R. Civ. P. 26(a)(2)(c).

Rule 37(c)(1) provides that "[a] party that without *substantial justification* fails to disclose information required by Rule 26(a) . . . is not, unless such failure is *harmless*, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1) (emphasis added). It is the burden of the party facing sanctions to show that the failure to comply was either substantially justified or harmless. *See Southern States*, 318 F.3d at 596. The district court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless." *Id.* at 597.

In this case, plaintiff filed her complaint on June 13, 2003, attaching the initial and supplemental reports of Dr. Cooper. In the reports, Dr. Cooper identifies himself as an Independent Medical Examiner with California Autopsy and Consultation in Fair Oaks, California, but there is no further information or elaboration regarding his credentials. In the reports, Dr. Cooper opines that Morgan died from "multiple bullet wounds to the head, administered at close range by one or more handguns," and that three of the wounds "exhibit characteristics of contact wounds." J.A. 21-22. Given that he identified himself only as a medical examiner, Dr. Cooper also asserts the rather remarkable opinion that Morgan "had been disarmed, if in fact he was ever armed, and he had been incapacitated by shotgun fire" prior to his "purposeful execution," and that the police officers were not "acting lawfully in self-defense or in the interest of public safety." J.A. 22.

On September 10, 2003, the district court entered its scheduling order, setting forth a discovery deadline of June 1, 2004, and a trial date of August 25, 2004. Plaintiff was required to make her expert disclosures by February 1, 2004; defendants were required to make their expert disclosures by March 1, 2004. Plaintiff, however, did not serve a Rule 26(a)(2)(B) disclosure for Dr. Cooper by the February 1 deadline, and in fact never filed the requisite disclosure. Defendants served a Rule 26(a)(2)(B) disclosure in accordance with their March

deadline, attaching the curriculum vitae and list of testimony for their independent expert, Dr. David Fowler, and served a supplemental disclosure on March 30, which contained more detailed opinions of Dr. Fowler.

On May 21, 2004, defense counsel advised plaintiff's counsel that the latter's failure to provide the requisite information with respect to Dr. Cooper rendered defendants "unable to sufficiently prepare for his deposition which we had hoped to take on May 27, 2004." J.A. 401. Defense counsel also advised that they would "move to exclude his opinions accordingly." J.A. 401.

Plaintiff's counsel contends that he made three unanswered telephone calls to defense counsel regarding the cancellation of the deposition and that he faxed a letter in response. However, plaintiff's counsel made no belated effort to obtain the requisite information or serve a disclosure for Dr. Cooper. Instead, plaintiff's counsel pointed to the reports of Dr. Cooper attached to the complaint and advised defense counsel that "[i]f you believe more is required perhaps you should review the information you provided regarding Dr. Fowler." J.A. 409. Three days later, plaintiff's counsel faxed a second letter to defense counsel advising that the "Plaintiff's Rule 26 documents are being copied and will be mailed to you tomorrow provided you agree to do the same with your Rule 26 documents." J.A. 418. Despite this representation, and the fact that defendants had filed and supplemented their expert disclosure two months earlier, plaintiff still did not serve a disclosure or forward any documents containing the required information.

Discovery closed on June 1, 2004. On June 21, 2004, defendants moved under Rule 37(c)(1) to exclude Dr. Cooper due to plaintiff's failure to provide the required information. In response to the motion, plaintiff again offered no explanation, nor made any attempt at belated compliance. Instead, plaintiff complained that defendants' disclosure of Dr. Zia Sabet "d[id] not contain any of the type of information that defendants argue was not provided for Dr. Cooper." J.A. 403. Plaintiff also asserted that defense counsel did not act in good faith to resolve the issue because they had failed to return plaintiff's counsel's telephone calls, Dr. Cooper's deposition had been scheduled for approximately one month before it was cancelled, and defen-

dants' expert disclosure of Dr. Fowler was initially incomplete and not supplemented until March 30.

On May 28, 2004, defendants advised plaintiff that Dr. Sabet, the West Virginia medical examiner who conducted Morgan's autopsy, was "not a witness who was retained or specially employed by the defendants to provide expert testimony in the matter but rather had performed the autopsy in the regular course of employment with the coroner's office." J.A. 415-16. There was, therefore, no requirement that defendants complete a Rule 26(a)(2)(B) disclosure for the witness. As for Dr. Fowler, defendants' disclosure notified plaintiff that Dr. Fowler would be testifying with regard to the examinations performed by Dr. Cooper and Dr. Sabet, and attached his curriculum vitae and list of testimony. The disclosure was supplemented on March 30 with a more detailed report of Dr. Fowler's opinions and conclusions, affording plaintiff sufficient time to notice and prepare for Dr. Fowler's deposition.

On March 23, 2005, more than one year after the expert disclosures were due under the scheduling order and more than ten months after the dispute over the deposition of Dr. Cooper arose, the district court granted defendants' motion to exclude Dr. Cooper as a witness. As of that time, plaintiff had still failed to provide the information required under the rule.

On appeal, plaintiff asserts that her failure to comply with the rule was either "surely inadvertent" or justified by her belief that defendants had failed to comply with their obligations under the rule; plaintiff also contends that her failure was harmless because Dr. Cooper's opinions were attached to the complaint. We address each contention in turn.

Initially, we note that plaintiff has not demonstrated that her failure was inadvertent. Plaintiff has provided no explanation for her initial failure to file the disclosure. And, when notified that she had failed to comply, plaintiff's response — that the "Rule 26 documents are being copied and will be mailed to you tomorrow provided you agree to do the same with your Rule 26 documents" — was clearly more in the nature of an outright refusal to comply. J.A. 418. In short, even if we were to consider mere inadvertence a "substantial justification"

under Rule 37(c)(1), plaintiff has not demonstrated that her failure to comply was an inadvertent act.

To the extent plaintiff asserts that her refusal to provide the information was "substantially justified" because defendants did not comply with Rule 26(a)(2)(B), we are equally unmoved. Aside from the fact that defendants' alleged failure could not have precipitated plaintiff's failure (given that the plaintiff's deadline had passed a month earlier), litigants are not excused from their obligations under the rules of procedure merely because an opponent has failed to comply with his obligations. The rules provide for remedies in the event an opponent fails to comply, and we note that plaintiff did not file a Rule 37(a)(1) motion to exclude Dr. Fowler as an expert witness based upon the asserted belief that defendants had fallen short.

Plaintiff's claim that her failure was harmless because Dr. Cooper's reports were attached to the complaint is also unavailing. Plaintiff argues that the "simple failure to disclose fairly rote information . . . did not unduly surprise or prejudice Defendants". Appellant's Brief at 22. Like the district court, we are unpersuaded. As noted above, Dr. Cooper's reports reveal nothing more than that he is an independent medical examiner with California Autopsy and Consultation. They provide absolutely no information about his qualifications, any publications authored by him, the compensation he would be paid for his work and testimony, or other cases in which he had testified as an expert. Nor is the omitted information fairly characterized as "rote." Indeed, we have previously recognized the critical importance of this type of information, particularly in cases which turn upon expert testimony:

> Rule 26 disclosures are often the *centerpiece* of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case. For this reason, "[w]e give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)".

*Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (emphasis added) (quoting *Southern States*, 318 F.3d at 595).

This is such a case. Plaintiff has no evidence, beyond Dr. Cooper's opinions, to substantiate her allegation that Deeds and Bradley unconstitutionally employed deadly force against Morgan. Yet, as a consequence of plaintiff's failure to provide the information plainly required by the rule, defendants were not permitted to investigate Dr. Cooper's licensure, training, background, or expertise, nor were they in a position to determine whether Dr. Cooper possessed the requisite qualifications to render the rather broad range of opinions contained in his reports.

In sum, we cannot say that the district court abused its discretion by excluding Dr. Cooper as a witness because plaintiff did not demonstrate substantial justification for her failure to comply with Rule 26(a)(2)(B), and the failure prejudiced defendants in their ability to defend against the accusations made by Dr. Cooper in a timely fashion. Every litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the information spelled out therein, and none shoulder the burden to independently investigate and ferret out that information as best they can and at the expense of their client. Indeed, Rule 26 provides that "[i]f a report from [an] expert is required under subdivision (a)(2)(B), the deposition *shall not be conducted* until after the report is provided." Fed. R. Civ. P. 26(b)(4)(emphasis added). The available penalty for failure to comply with Rule 26(a)(2)(B) is equally plain, and if a litigant refuses to comply with the requirements of the rule, he does so at his peril. *See Saudi*, 427 F.3d at 274 (noting that "[l]itigants who fail to comply with court scheduling and discovery orders should not expect courts of appeal to save them from the consequences of their own delinquence.").

### D.

To be sure, plaintiff's allegations in this case are most serious, but they are equally serious for *both* sides of this controversy. The district court afforded plaintiff a full and sufficient time to discover and produce evidence to substantiate her allegations by proper and admissible evidentiary support, but plaintiff failed to do so. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," and Rule 56 must be interpreted and applied "in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

Granting summary judgment to Deeds squarely serves this purpose of Rule 56, as well as the directive that we not delay granting governmental officials qualified immunity in appropriate cases. Accordingly, we affirm the district court's exclusion of plaintiff's expert witness and the district court's grant of summary judgment against plaintiff on the § 1983 excessive force claim arising from Morgan's death.

III.

We now turn to plaintiff's appeal from the district court's order granting summary judgment on her claim that Deeds employed excessive force against Morgan following the June 20 arrest. Deeds moved for summary judgment on the basis of qualified immunity for this claim as well, asserting that there is insufficient evidence to prove that he was involved in any altercation with Morgan, as well as insufficient evidence that Morgan's alleged injuries were more than *de minimis*.

"[E]xcessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc). To succeed, the plaintiff must first demonstrate "that Defendants 'inflicted unnecessary and wanton pain and suffering'" upon the detainee. *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). "The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (internal quotation marks omitted). "Even if there is a genuine issue of material fact as to whether Defendants behaved maliciously or sadistically after the need for force has subsided," plaintiff must also demonstrate that the injuries were "more than *de minimis*" or that "'the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Id.* (quoting *Norman v. Taylor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc)).[4]

---

[4]The *de minimis* injury exception stems from the recognition that there is "a de minimis level of imposition [of punishment] with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674

Accordingly, in order to avoid summary judgment on the basis of qualified immunity, it was incumbent upon plaintiff to produce sufficient admissible evidence from which a jury could conclude that Deeds employed at least some force against Morgan in a malicious or sadistic manner, and that the injuries resulting from such force were more than *de minimis*.[5] Deeds is entitled to qualified immunity because, regardless of the severity of Morgan's alleged injuries, the record is devoid of any facts to prove that Deeds employed the force that inflicted those injuries.

Viewing the evidence in the light most favorable to plaintiff, it appears that Deeds and at least two other law enforcement officers arrested Morgan at Arbaugh's home on June 20, and that one or more of these officers transported Morgan to the State Police Barracks. Morgan was then transported to the Southern Regional Jail, where

---

(1977); *cf. Hudson v. McMillian*, 503 U.S. 1 (1992). Such "*de minimis* uses of physical force" are "necessarily exclude[d] from constitutional recognition" and not cognizable under § 1983. *Riley*, 115 F.3d at 1166. We applied the *de minimis* rule of *Hudson*, holding that "a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." *Norman*, 25 F.3d at 1263. And, we extended that rule to claims under the Due Process clause in *Riley*. *Riley*, 115 F.3d at 1166. Although the Constitution does "not require that an injury be serious or leave visible marks or scars" to be actionable, we held that "*de minimis* injury can serve as conclusive evidence that *de minimis* force was used." *Riley*, 115 F.3d at 1168 (quoting *Norman*, 25 F.3d at 1261). Force that is "of a sort repugnant to the conscience of mankind" *see Hudson*, 503 U.S. at 10 (internal quotation marks omitted), is "expressly outside the *de minimis* force exception," *Norman*, 25 F.3d at 1263 n.4. *See also Riley*, 115 F.3d at 1168 n.4 (listing, as examples of such repugnant force, acts such as "forcibly pumping a suspect's stomach for evidence after unlawfully entering his house and bedroom or severely whipping and hanging a suspect in order to obtain a confession." (internal citations omitted)).

[5]Plaintiff does not claim that "the force used [is] of a sort repugnant to the conscience of mankind . . . or [that] the pain itself was such that it can properly be said to constitute more than *de minimis* injury," *Taylor*, 155 F.3d at 483 (internal quotation marks omitted), and there is no evidence to support such a claim.

witnesses observed some minor injuries when Morgan was processed. Other witnesses observed a few additional, but still relatively minor, injuries after Morgan was released from jail. However, plaintiff presented no admissible testimony or other evidence from which a jury could conclude that any of those injuries were inflicted by Deeds.

No witness observed any altercation between Morgan and any state police officer. Although Dr. Bookout testified that Morgan told him that some of the injuries were the result of an altercation with a state police officer, Morgan did not identify Deeds as the officer involved or provide any facts as to the circumstances of the alleged altercation. Thus, the only evidence that plaintiff can point to in an effort to implicate Deeds is the testimony of the three family members and Arbaugh to the effect that Morgan either told them or indicated by pointing that Deeds had inflicted the injuries. These statements by Morgan are hearsay and not admissible to create a genuine issue of material fact on the question of whether Deeds inflicted those injuries.

Plaintiff's attempt to demonstrate that Deeds made an "adoptive admission" to assaulting Morgan because he was present in the room when Morgan made the statements to his family members also fails. Under the Federal Rules of Evidence, "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth." Fed. R. Civ. P. 801(d)(2)(B). "A party may manifest adoption of a statement in any number of ways, including through words, conduct, or silence." *United States v. Robinson*, 275 F.3d 371, 383 (4th Cir. 2001). However, "[w]hen a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." *United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006) (internal quotation marks omitted).

In this case, there is testimony that Deeds was in the room when the family was visiting, but plaintiff has not demonstrated "sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." *Id.* (internal quotation marks omitted). Nor has plaintiff offered an argument that a

police officer, conducting his official duties in the presence of a detainee and his family, "would normally be induced to respond" to the detainee's claim, made solely to his family, that the officer had assaulted him. Indeed, we think it more likely that the officer would ignore the statement rather than risk antagonizing or inciting the detainee or his family by disputing it.

Finally, even if Deeds had made an adoptive admission, the admission would not save plaintiff's case from summary judgment. An outright admission by Deeds that he inflicted the injuries would reveal nothing about the circumstances of the force employed, and plaintiff would still suffer from the unfulfilled burden of establishing that the force was excessive under the circumstances; *i.e.*, that it was inflicted "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Taylor*, 155 F.3d at 483 (internal quotation marks omitted).

This brings us to plaintiff's argument that Deeds bore the burden to present an affidavit stating whether he heard Morgan's statement, whether he was involved in an altercation with Morgan, and, if so, what the circumstances were surrounding that altercation. Plaintiff argues Deeds' failure to present evidence that Morgan engaged in conduct that prompted the use of responsive force or otherwise explain Morgan's injuries creates the presumption that Deeds employed excessive and punitive force against Morgan that day. At a minimum, plaintiff argues, Deeds failed to properly support his motion for summary judgment, leaving a question of fact regarding how Morgan's injuries were sustained.[6]

This argument is wholly without merit. As an initial premise, we note that the plaintiff did not raise as an issue on appeal the defendants' failure to file a properly supported motion for summary judgment under Rule 56. But even if we were to assume that plaintiff's

---

[6]It does not appear that plaintiff ever deposed Deeds, although he was certainly identified as a witness. There is an assertion in the record below that plaintiff scheduled Deeds' deposition, but chose to cancel it. Plaintiff's counsel offered no explanation as to why the answers to these questions were not pursued through discovery.

"burden" issue is properly before us, plaintiff's argument is squarely foreclosed by *Celotex*.

In *Celotex*, the district court granted summary judgment against plaintiff because the plaintiff "was unable to produce evidence in support of her allegation in her wrongful-death complaint that the decedent had been exposed to petitioner's asbestos products." 477 U.S. at 319. The Court of Appeals reversed, holding that the motion was defective because the defendant had "made no effort to adduce *any* evidence, in the form of affidavits or otherwise, to support its motion." *Id.* at 321 (internal quotation marks omitted). The Supreme Court disagreed, holding that although the "party seeking summary judgment always bears the initial responsibility of informing the district court of the *basis* for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, *if any*,' which it believes demonstrate the absence of a genuine issue of material fact," *id.* at 323 (emphasis added), there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

In short, there is no burden upon "the party moving for summary judgment to produce evidence showing the *absence* of a genuine issue of material fact." *Id.* at 325 (emphasis added). Rather, "the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the [summary judgment] motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323. Indeed, "district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." *Id.* at 326. In sum, Deeds, having denied the material allegations of the complaint and filed a motion for summary judgment pointing out the absence of evidence to support plaintiff's case, bore no burden to produce an affidavit denying plaintiff's allegations or to otherwise support his motion with materials negating the claim of an unconstitutional use of force.

To conclude, we hold that Deeds is entitled to qualified immunity as a matter of law because the plaintiff failed to bring forth admissible evidence from which the jury could conclude that he was involved in an altercation with Morgan, and certainly no evidence that Deeds employed force that was excessive under the circumstances. Deeds' entitlement to qualified immunity, therefore, arose well before any need to evaluate the severity of Morgan's injuries. Accordingly, we affirm the district court's grant of qualified immunity to Deeds.

## IV.

For the foregoing reasons, we affirm the district court's order excluding plaintiff's expert report and affirm the district court's order granting summary judgment to the defendants.

*AFFIRMED*