Laila Rose PERKINS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civil Action No. 4:08cv50.

United States District Court,
E.D. Virginia,
Newport News Division.

June 16, 2009.

James P. St. Clair, Esq., Virginia Beach, VA, for Plaintiff.

Kent P. Porter, Norfolk, VA, for Defendant.

## ORDER

ROBERT G. DOUMAR, Senior District Judge.

This matter comes before the Court upon the Objection of the Plaintiff, Laila Rose Perkins, to the Opinion and Order of U.S. Magistrate Judge Tommy E. Miller of June 4, 2009 pursuant to Rule 72. In his Opinion and Order, Judge Miller determined the following: 1) Dr. Cloud's testimony shall be excluded for all purposes; 2) Dr. Wardell may testify at trial only to his treatment of Ms. Perkins, and his testimony is not admissible regarding (a) the causation of Perkins' injuries and (b) the prognosis of future medical costs.

A magistrate judge's finding or opinion shall only be set aside if it is clearly erroneous or contrary to law. Fed.R.Civ.P.

72(a). This Court has previously determined that "[a] finding is clearly erroneous only 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that an error has been committed.'" *Carefirst of Maryland, Inc. v. First Care, P.C.*, 350 F.Supp.2d 714, 718 n. 2 (E.D.Va.2004) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

This Court has reviewed both the Plaintiff's set of objections and Judge Miller's Opinion and Order. The Court finds that Judge Miller's Opinion is not erroneous or contrary to law, and moreover, the Plaintiff gives no grounds to substantiate her objection. Therefore, Judge Miller's Opinion and Order will be accepted as whole.

The Plaintiff's Objection is **OVERRULED.** The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

### OPINION & ORDER

TOMMY E. MILLER, United States Magistrate Judge.

After a review of the memoranda submitted by the parties and the applicable statutory and case law, and for the reasons set forth below, the Court GRANTS Defendant's Motion in Limine to Exclude or Limit Testimony of Dr. Harold Cloud [Doc. 9], and GRANTS Defendant's Second Motion in Limine to Exclude Plaintiff's Expert Dr. Wardell Under *Daubert v. Merrell Dow Pharmaceuticals* [Doc. 16].

1. Perkins Complaint was filed by James P. St. Clair, Esq., as Tim Hankins was discharged prior to filing suit.

2. All citations to Defendant's *First* Brief refer to Defendant's Memorandum in Support of Motion in Limine to Exclude or Limit Testimony of Dr. Harold Cloud [Doc. 10].

### I. Factual and Procedural History

This case arises from a motor vehicle accident on I–64, in Hampton, Virginia. On June 8, 2005, the vehicle of Plaintiff Laila Rose Perkins ("Perkins") collided with a vehicle driven by an employee of the Federal Bureau of Investigations ("FBI"). (Compl. [Doc. 1], ¶¶ 5–7.) On June 14, 2005, Perkins signed a retainer agreement with an attorney, Tim Hankins,[1] to represent her in any lawsuit related to the accident. (Def.'s First Br., Ex. 2.)[2] The next day, Perkins began treatment with Dr. Harold Cloud ("Dr. Cloud") to address any injuries arising from the accident. (Def.'s First Br., Ex. 5.) In addition to Dr. Cloud and several other physicians, Perkins also received treatment from Dr. Arthur Wardell ("Dr. Wardell"), an orthopaedic specialist, beginning on September 9, 2005. (Def.'s Second Br., Ex. 2.)[3]

On April 22, 2008, Perkins filed a Complaint against the United States in this Court, alleging that the FBI employee had negligently and recklessly changed lanes on I–64, struck Perkins' vehicle, and proximately caused Perkins "to sustain serious and permanent injuries." (Compl. ¶¶ 7–8.) The United States timely filed an Answer on June 27, 2008. [Doc. 5.] On January 16, 2009, the United States filed a Motion in Limine to Exclude or Limit Testimony of Dr. Harold Cloud. ("Def.'s First Br." [Doc. 9.]) On January 27, 2009, Perkins responded to the motion ("Pl.'s First Br." [Doc. 11]), and January 30, 2009, the United States filed its reply [Doc. 13]. Thus, the first Motion in Limine is fully briefed and ripe for adjudication.

3. All citations to Defendant's *Second* Brief refer to Defendant's Memorandum in Support of its Second Motion in Limine to Exclude Plaintiff's Expert Dr. Arthur Wardell [Doc. 17].

On April 8, 2009, the United States filed the Second Motion in Limine to Exclude Plaintiff's Expert Dr. Wardell Under *Daubert v. Merrell Dow Pharmaceuticals.* ("Def.'s Second Br." [Doc. 16.]) On April 20, 2009, Perkins responded to the motion ("Pl.'s Second Br." [Doc. 18]), and on April 24, 2009, the United States filed its reply [Doc. 19]. Accordingly, the second Motion in Limine is also fully briefed and ripe for adjudication.

Finally, on June 4, 2009, the Court heard oral argument on both motions. James P. St. Clair, Esq., represented the Plaintiff, and Kent P. Porter, Esq. represented the Defendant. Paul McManus was the Official Court Reporter.

## II. Analysis

### A. Defendant's Motion to Exclude Testimony of Dr. Cloud

Dr. Harold Cloud ("Dr. Cloud") began treating Perkins on June 15, 2005, one week after Perkins' motor vehicle accident. Dr. Cloud expects to testify at trial that the physical injuries observed during his treatment of Perkins were caused by the accident. (Def.'s First Br., Ex. 2 at 52–53.) During discovery, Perkins disclosed Dr. Cloud as an expert pursuant to Federal Rule of Civil Procedure ("Rule") 26(a)(2)(A), but did not provide an expert report from Dr. Cloud under Rule 26(a)(2)(B). Defendant contends that Dr. Cloud is subject to the written report requirement of Rule 26(a)(2)(B), and further argues that Dr. Cloud's testimony should be excluded entirely, or in the alternative, limited to exclude any opinion regarding the causation of Plaintiff's injuries.

The federal rules require that the disclosure of an expert witness "must be accompanied by a written report—prepared and signed by the witness—if the witness is one *retained or specially employed* to provide expert testimony in the case...." Fed.R.Civ.P. 26(a)(2)(B)(emphasis added). Perkins argues that Dr. Cloud, the treating physician, "was in no way specially retained to provide expert opinion" in this case. (Pl.'s First Br. at 1.) Thus, the central issue is "when does a treating physician become a specially retained expert as defined in [Rule] 26(a)(2)(B) so that an expert written report must be prepared." *Hall v. Sykes,* 164 F.R.D. 46, 48 (E.D.Va. 1995).

In general, a treating physician is not a specially retained expert. This Court has recognized, for example, that an expert written report is not necessarily required when a treating physician receives compensation for their time in attending a deposition, writing a letter summarizing treatment, or testifying at trial. *Id.* Furthermore, if a treating physician forms an opinion of the causation of an injury during the *ordinary* treatment of the patient, then the physician may express this opinion without disclosing a written report. *Id.* When an attorney refers a client to a physician, however, "[s]uch a reference ... raises the appearance that the physician was specially retained to provide expert opinion." *Id.* at 49. In *Hall v. Sykes,* counsel provided his client, the plaintiff, with a list of chiropractors, and the plaintiff went to one of these chiropractors for treatment. This Court held that the chiropractor must produce an expert written report, "because ... when an attorney selects the physician for treatment as well as testimony, it is presumed that the physician was selected for expert testimony." *Id.*

Although Perkins denies that her attorney referred her to Dr. Cloud,[4] the

---

4. In her deposition, Perkins claims that she picked Dr. Cloud out of the Yellow Pages.

(Def.'s First Br., Ex. 3 at 118–20.)

evidence overwhelmingly indicates that Dr. Cloud was specially retained for litigation. First, the timing raises suspicion. The accident took place on June 8, 2005, but Perkins did not begin treatment with Dr. Cloud until June 15, 2005, the day after she signed a retainer agreement with her attorney.[5] Second, Perkins executed a written agreement with Dr. Cloud, which established that (a) Dr. Cloud was not Perkins' primary care physician, (b) Dr. Cloud was only treating Perkins for the injuries sustained in the motor vehicle accident, and (c) litigation was pending. (Def.'s First Br., Ex. 5.) Furthermore, Dr. Cloud did not bill Perkins or a medical insurance provider, but rather, billed Perkins' attorney directly.[6] (Def. First Br., Ex. 4 at 129–30.) These facts, therefore, clearly "raise[ ] the appearance that [Dr. Cloud] was specially retained to provide expert opinion." *Sykes,* 164 F.R.D. at 49. Accordingly, the failure of Dr. Cloud to provide an expert report constitutes a violation of Rule 26(a)(2)(B).

■ Finally, Perkins cites the wrong legal standard to determine whether the exclusion of Dr. Cloud is appropriate. Perkins argues that *Anderson v. Foundation for Advancement, Education, and Employment of American Indians* mandates a four-part factor analysis, including consideration of the absence or presence of bad faith, but the *Anderson* case did not involve the failure to provide an expert report under Rule 26(a)(2)(B). 155 F.3d 500 (4th Cir.1998). Instead, the Federal Rules of Civil Procedure, in relevant part, provide:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified or is harmless.*

Fed.R.Civ.P. 37(c)(1)(emphasis added). In order to determine if the failure to satisfy Rule 26(a) was "substantially justified" or "harmless," a district court should consider the following five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack And Fixture, Inc. v. Sherwin–Williams Co.,* 318 F.3d 592, 597 (4th Cir.2003). Consideration of bad faith, specifically, is not a factor in the analysis. *Id.* at 597–98.

■ The burden is on the plaintiff to prove either substantial justification or harmlessness, *Id.* at 596, and Perkins fails to meet this burden. Although Perkins argues that Dr. Cloud's deposition cured any surprise or prejudice, Dr. Cloud equivocated on facts that should have been presented in an expert written report (Def.'s First Br., Ex. 4), and belabored the deposition to the tune of $1,250 (Def.'s First Br., Ex. 7). Perkins does not address the third and fourth factors, and most importantly, does not provide a justifiable explanation

---

5. Perkins cites no authority to support the claim that the substitution of counsel, Mr. St. Cloud for Mr. Hankins, somehow cleanses Dr. Cloud of his status as a specially retained expert. As the Defendant points out, not only does this argument contradict the plain language of Rule 26(a)(2)(B)(report required "if the witness is one retained or specially employed to provide expert testimony *in the*

*case* ") (emphasis added), but Perkins' proposed rule would also create an intolerable loophole for curing discovery violations.

6. In fact, during the period 2003–2008, Dr. Cloud had billed and received $269,779.11 from Tim Hankins, in connection with multiple patients. (Def.'s First Br., Ex. 6.)

for the omission of the expert written report. As the Fourth Circuit has stated:

Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case. For this reason, we give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).

*Carr v. Deeds,* 453 F.3d 593, 604 (4th Cir.2006)(internal quotations and citations omitted). We find that Perkins' violation of Rule 26(a)(2)(B) hindered Defendant's ability to prepare for the deposition and, without valid justification, undermined the integrity of the discovery process. Accordingly, the Court ORDERS that Dr. Cloud's testimony, in its entirety, shall be excluded for all purposes.

## B. Defendant's Motion to Exclude Testimony of Dr. Wardell

Dr. Arthur Wardell ("Dr. Wardell"), an orthopedic surgeon, began treating Perkins on September 9, 2005. Although Dr. Wardell did not produce a formal written report pursuant to Rule 26(a)(2)(B), he sent a letter to Perkins' attorney, Tim Hankins, on November 8, 2007, outlining Perkins' injuries, the causation of these injuries, and the estimated cost of these injuries going forward. (Def.'s Second Br., Ex. 2.) At his deposition on December 10, 2008, Dr. Wardell testified in accord with his letter to Mr. Hankins. (Def.'s

Second Br., Ex. 3.) Defendant moves to exclude Dr. Wardell's testimony as unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny.

Under Federal Rule of Evidence 702, as interpreted by the U.S. Supreme Court in *Daubert,* a district court assumes a "gatekeeping role" to "ensure that any and all[7] scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589, 597, 113 S.Ct. 2786. When a party seeks to enter expert testimony into evidence, the trial judge must conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93, 113 S.Ct. 2786. Furthermore, the burden of establishing the reliability of the expert testimony is on the proponent, Perkins. *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir.2001)(citing *Daubert,* 509 U.S. at 592 n. 10, 113 S.Ct. 2786). With respect to the causation of Perkins' injuries and the prognosis of future medical costs, Perkins has failed to establish that Dr. Wardell's testimony is reliable. The reasons for this failure are manifold.

First, Dr. Wardell's opinion on the causation of Perkins' injuries is based solely on Perkins' self-report that the injuries were caused by the motor vehicle accident. (Def.'s Second Br., Ex. 3.) In *Bowers v. Norfolk Southern Corp.,* a federal district

---

7. Despite argument by Perkins to insulate treating physicians from a traditional examination of reliability under *Daubert* (Pl.'s Second Br. at 8–9), the plain language of the *Daubert* decision extends the threshold requirement of reliability to "any and all" medical testimony, including that of treating physicians. *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786. *See also Turner v. Iowa Fire Equip. Co.,* 229 F.3d 1202, 1207 (8th Cir.2000)("A treating physician's expert opinion on causation is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for purposes of litigation.")(citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 151, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

court found that "Dr. Wardell simply took Plaintiff's word for what happened and adopted that explanation as his own opinion on causation." 537 F.Supp.2d 1343, 1357 (M.D.Ga.2007). In supporting its decision to exclude Dr. Wardell's testimony, the *Bowers* court held that merely adopting a patient's theory of causation fails the fourth of the factors laid out by the notes of the Advisory Committee to the 2000 Amendments to Rule 702 of the Federal Rules of Evidence: "Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting."[8] *Id.* at 1351, 1358 (internal quotations omitted). Likewise, in the present case, Dr. Wardell's exclusive reliance on a patient's self-report fails to employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Second, Dr. Wardell did not adequately investigate Perkins' relevant medical history. According to the Fourth Circuit, "[a] reliable differential diagnosis typically ... is performed after physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests." *Cooper,* 259 F.3d at 200. By taking Perkins' self-report at face value, and not developing an accurate medical history for his patient, Dr. Wardell neither knew nor considered Perkins' history of prior trauma and injury. For example, at the time of forming his medical opinion of Perkins, Dr. Wardell was not aware of the following incidents involving Perkins:

(a) two prior motor vehicle accidents, in 1980 and around 1995, which resulted in injuries and emergency room treatment;

(b) knee and back injury, resulting from falling off a ramp in 1997, which resulted in ongoing neck and back pain;

(c) another fall at work, in 2000, injuring head and back, resulting in continued neck and back pain;

(d) injury to right arm and trapezius muscle, resulting from picking up a heavy bag in 2004; and

(e) on May 4, 2005, one month prior to the motor vehicle accident alleged in the present case, Perkins visited the emergency room complaining of left knee pain and swelling.

(Def.'s Second Br., Ex. 1 at 2, ¶ 6 and 20–21.) Even if the medical profession does not fault Dr. Wardell for his reliance on Perkins' self-report, and in turn, his ignorance of Perkins's prior trauma and treatment, the law still demands that his expert testimony be reliable. When asked during his deposition if these injuries would be "important to know and potentially alter what conclusions you had [on the causation of Perkins' current complaints]," Dr. Wardell answered, "Yes." (Def.'s Second Br., Ex. 3 at 34.) Thus, by Dr. Wardell's own admission, the quality of his conclusions is undermined by the existence of unknown prior trauma. Furthermore, Dr. Wardell did not know Perkins' prior history of medication and did not review the hospital records of June 2005, which included the emergency physicians' findings, diagnoses, and recommendations for treatment. *Id.* at 67–68. Again, Dr. Wardell admitted that knowledge of whether Perkins complied with the hospital physicians' recommendations for treatment "would never be not important," *Id.* at 28–29, or in demystified terms, would always be important.

---

**8.** Although Perkins presents Dr. Wardell as a treating physician, Dr. Wardell knew from the outset of treatment that he would be involved in litigation to render an expert opinion. (Def.'s Second Br., Ex. 3 at 80.) Dr. Wardell further admitted that an opinion on causation is a legal conclusion, more "driven by the legal aspects of the case than by the medicine." *Id.* at 67.

Therefore, Dr. Wardell failed to consider a wealth of "important" information in making conclusions on the causation of Perkins' latest injuries, and as a result, the reliability of these conclusions is substantially weakened.

Third, and perhaps most importantly, Dr. Wardell failed to consider alternative explanations for Perkins' injuries. Although the alternative causes raised by a defendant typically do not preclude the admissibility of a plaintiff's expert's testimony:

> [A] differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation. . . . Thus, if an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony.

*Cooper,* 259 F.3d at 202 (citations omitted). In *Cooper,* the defendant offered alternative explanations for plaintiff's nonunion of vertebrae following spinal surgery, including the plaintiff's long history of smoking. The plaintiff's expert physician denied that smoking was a cause of the injury. The Fourth Circuit affirmed the exclusion of plaintiff's expert physician, because the physician "did not identify specifically how he ruled out smoking and other potential causes of the nonunion." *Id.* at 203. Moreover, "[i]n the face of the medical literature and Cooper's own records, [the physician] categorically dismissed any suggestion that Cooper's smoking was the cause of the nonunion." *Id.* at 202.

Under *Cooper,* Dr. Wardell's causation opinion is further unreliable, because Dr. Wardell either "categorically dismissed" or ignored evidence of other preexisting conditions when such evidence was available to him at the time of treatment. In particular, Dr. Wardell does not explain how he ruled out osteoarthritis as a cause, or a partial cause, of Perkins' current symptoms. Osteoarthritis, a degenerative joint disease that causes pain, is present in Perkins' "neck, lower back, left knee and right foot, all areas purportedly injured in the accident." (Def.'s Second Br., Ex. 1 at 2–3, ¶ 7.) During his deposition, Dr. Wardell testified that the degenerative joint disease is a preexisting condition unrelated to the motor vehicle accident, and that this disease can cause pain and swelling. (Def.'s Second Br., Ex. 3 at 69–76.) Despite the presence of this pain-inducing disease in Perkins' neck, back, and joints, however, Dr. Wardell reiterates his conclusion "that her left knee, her neck, her upper and lower back, her left hip, her right foot and her left leg complaints [of pain] were due to the [motor vehicle] accident." *Id.* at 66. Furthermore, discussion of a preexisting degenerative joint disease is conspicuously absent from Dr. Wardell's letter opinion to Perkins' attorney. (Def.'s Second Br., Ex. 2.) Thus, as was the case in *Bowers,* "Dr. Wardell's failure to adequately account for this obvious alternative explanation creates a fatal analytical gap in his testimony." 537 F.Supp.2d at 1356.

This "fatal analytical gap" is compounded by Dr. Wardell's failure to address the issue of obesity. Defendant frames the issue as follows:

> Insofar as Dr. Wardell acknowledges plaintiff is obese, [ (Ex. 3 at 59) ], and "[o]bese people have significantly more problems with back and neck pain, as well as knee and foot problems," [ (Ex. 1 at 3, ¶ 8) ], it would reasonably follow that plaintiff's obesity might amplify the likelihood of pain from plaintiff's extensive osteoarthritis in her weight bearing joints. Again, any reference to plaintiff's obesity is notably absent from Dr. Wardell's report of his physical examination, or anywhere else in his expert opinion letter. [ (Ex. 2.) ]

(Def.'s Second Br. at 14)(footnote omitted). Dr. Wardell's diagnosis of Perkins is driven by willful blindness to plausible, perhaps even probable, alternative explanations for his patient's symptoms and injuries. By selectively ignoring the facts that would hinder the patient's status as a litigant, Dr. Wardell reveals himself as the infamous "hired gun" expert.

Thus, even without Dr. Robert S. Neff's detailed description of how Dr. Wardell "failed to employ the clinical decision making process that is standard practice in the medical profession," (Def.'s Second Br., Ex. 1 at 2, ¶ 5), the record clearly indicates that Dr. Wardell's opinion on the causation of Perkins' injuries lacks sufficient reliability, and therefore, is inadmissible.

 Similarly, for the reasons state above, the Court also excludes Dr. Wardell's prognosis of future medical costs for Perkins. According to the evidence before the Court, the prognosis is nothing beyond a guess. Dr. Wardell does not provide any methodological basis for the prognosis. Perkins argues that such a deficiency would go to the weight, not admissibility, of the evidence, but "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Cooper*, 259 F.3d at 203 (quoting *Kumho Tire*, 526 U.S. at 157, 119 S.Ct. 1167).

In sum, the Court ORDERS that Dr. Wardell's testimony is not admissible regarding (1) the causation of Perkins' injuries and (2) the prognosis of future medical costs. Dr. Wardell may testify at trial, but only to his treatment of Perkins.

### III. Order

The Court GRANTS Defendant's Motion in Limine to Exclude or Limit Testimony of Dr. Harold Cloud [Doc. 9], and ORDERS that Dr. Cloud's testimony, in its entirety, shall be excluded for all purposes. The Court also GRANTS Defen-

dant's Second Motion in Limine to Exclude Plaintiff's Expert Dr. Wardell Under *Daubert v. Merrell Dow Pharmaceuticals* [Doc. 16], and ORDERS that Dr. Wardell may testify at trial only to his treatment of Perkins, and that Dr. Wardell shall not testify regarding (1) the causation of Perkins' injuries and (2) the prognosis of future medical costs.

The Clerk shall mail a copy of this Order to all counsel of record.