**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-2128

LESLIE M. ANTHONY,

Plaintiff - Appellant,

v.

UNITED AIRLINES, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:24-cv-00494-AJT-LRV)

Submitted:  November 3, 2025                        Decided:  January 6, 2026

Before THACKER and HEYTENS, Circuit Judges, and Gina M. GROH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Carla D. Aikens, CARLA D. AIKENS, P.L.C., Detroit, Michigan, for Appellant.  John M. Remy, Felicia K. Marsh, JACKSON LEWIS P.C., Reston, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Leslie Anthony ("Appellant") is a Black woman in her late fifties who worked as a probationary flight attendant for United Airlines, Inc. ("Appellee"). Appellee terminated Appellant's employment after Appellant earned three attendance related disciplinary strikes. Appellant then filed suit, alleging that Appellee discriminated against her on the basis of race and age and retaliated against her for reporting that discrimination.

The district court granted summary judgment in favor of Appellee on all claims. On appeal, Appellant challenges only the district court's dismissal of her retaliation claim. Because we conclude that Appellant fails to make out a prima facie claim of retaliation, we affirm.

I.

Appellant began her employment with Appellee on approximately July 4, 2022. Appellant, like all new United flight attendants, had to undergo a six week training period, followed by a 180 day probationary period. Appellant completed her training and became a probationary flight attendant ("PFA") in mid-August 2022. Her probationary period was set to end in mid-February 2023.

PFAs are subject to Appellee's "Developing U Disciplinary Process," which uses a "Matrix" that applies progressive discipline, known as Interim Evaluations, for infractions. J.A. 485–86; 215.[1] The Matrix essentially imposes a strike system for attendance related

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

2

issues, with the third strike resulting in termination of employment. For example, PFAs earn strikes for taking sick days, missing flights, or failing to respond to calls. There is no dispute that Appellant took sick days on October 2, 2022, and November 9, 2022, while she was a PFA, and that those sick days resulted in Appellant's first two strikes. There is also no dispute that while Appellant was on the flight attendant "Reserve List," which is an "on call" list, she failed to respond to at least three calls by Appellee's scheduling department on January 17, 2023. As a result, the scheduling department marked Appellant as Unable to Contact ("UTC").

That same day, Appellant alerted her supervisor, Sabrina Yoon, about the UTC via email and explained that she missed the calls because she had taken Tylenol PM around 9 p.m. the night before. Yoon listened to all of the recorded calls and determined -- as Appellant had conceded -- that Appellant was, in fact, unable to be contacted while she was on the Reserve List. The Matrix specifies that a UTC typically results in an Interim Evaluation 2. But, because Appellant was already at an Interim Evaluation 3 (i.e., her second strike) due to her two sick days, the Matrix required "Termination Separation/Release." J.A. 215. As a result, Yoon terminated Appellant's employment on January 29, 2023.

Appellant claims that between receiving the UTC on January 17 and being terminated on January 29, she contacted human resources ("HR") and Appellee's Employee Assistance Program ("EAP") to report that Yoon was discriminating against her

3

based on her age and race.  But, aside from Appellant's assertion, there is no record evidence to support these claims.

On February 13, 2023, Appellant filed separate charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights.  After receiving notice of her right to sue from the EEOC, Appellant filed this lawsuit against Appellee in the Eastern District of Michigan on November 10, 2023.  The case was later transferred to the Eastern District of Virginia.

Appellant's complaint raised the following eight claims: (I) retaliation, in violation of 42 U.S.C. § 1981; (II) racial discrimination, in violation of 42 U.S.C. § 1981; (III) racial discrimination, in violation of Title VII, 42 U.S.C. 2000d et seq.; (IV) racial discrimination, in violation of the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101 et seq. ("ELCRA"); (V) retaliation, in violation of Title VII; (VI) retaliation, in violation of the ELCRA; (VII) age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 to 29 U.S.C. § 634; and (VIII) harassment and discrimination on the basis of age, in violation of the ELCRA.  The district court granted summary judgment in favor of Appellee on all of Appellant's claims on October 10, 2024.

Appellant timely filed this appeal.

II.

"We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court." *al-Suyid v. Hifter*, 139 F.4th 368, 373 (4th Cir. 2025) (quotation marks and citation omitted).  "Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

4

matter of law." *Sigley v. ND Fairmont LLC*, 129 F.4th 256, 260 (4th Cir. 2025) (quoting Fed. R. Civ. P. 56(a)). While we take the facts in the light most favorable to the non-moving party, "it is ultimately the nonmovant's burden to persuade us that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence -- and not merely conclusory allegations or speculation -- upon which a jury could properly find in its favor." *Canaan Christian Church v. Montgomery Cnty.*, 29 F.4th 182, 192 (4th Cir. 2022) (quoting *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014)).

### III.

On appeal, Appellant challenges the district court's dismissal of her federal retaliation claims, that is, Counts I and V.[2] She also argues generally that summary judgment is improper because it deprives a plaintiff of her Seventh Amendment right to a jury. We reject both of Appellant's arguments.

### A.

Because Appellant has no direct evidence of retaliation, her claims must be analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which proceeds in three steps. First, "a plaintiff must make out a *prima facie* case of [retaliation]." *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025) (citation omitted). If the plaintiff does so, the second step shifts "[t]he burden of production . . . to the employer to articulate a legitimate, non-discriminatory justification

---

[2] There is no dispute that all of Appellant's retaliation claims pursuant to 42 U.S.C. § 1981 and Title VII can be considered together.

for its allegedly discriminatory action." *Id.* Finally, "[i]f the employer carries this burden, the plaintiff then must prove by a preponderance of the evidence that the neutral reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks and citation omitted).

The district court determined that Appellant did not establish a prima facie case in the first instance. But even if she did, the district court also determined that Appellant could not adduce facts to create a genuine dispute as to whether Appellee's proffered legitimate, nondiscriminatory reason for firing her was pretextual. Appellant challenges both rulings on appeal.[3]

As to the prima facie case, Appellant must show "(i) that she engaged in protected activity, (ii) that [Appellee] took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (cleaned up). Only the first and third elements are at issue here.

Appellant claims she engaged in protected activity "when she reported discriminatory treatment by her supervisor, [Yoon], to . . . HR and the . . . EAP[] in early January 2023." Opening Br. at 12.[4] But there is no record evidence beyond Appellant's

---

[3] Appellant also argues that the district court improperly applied *McDonnell Douglas* "as a procedural requirement rather than as a tool for evaluating circumstantial evidence." Opening Br. at 15–16. We disagree and decline to address this argument further given our de novo review.

[4] Appellant also claims that she reported discriminatory conduct to Appellee's Dulles Base Manager, Brian Kozminski. But, critically, she admitted in her deposition that (Continued)

self-serving deposition testimony that those reports actually occurred.  There are no emails or phone records to corroborate Appellant's deposition testimony, even though she claims to have contacted HR from her United email account.  But we need not wade further into that analysis, because even if we assume Appellant provided sufficient evidence of protected activity, we conclude that she failed to provide evidence of a causal relationship between the alleged protected activity and her termination.

In order to demonstrate the requisite causal relationship, "we have consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 412 (4th Cir. 2022) (cleaned up).  "Knowledge of a protected activity means not only knowledge that the activity occurred, but also knowledge that the employee engaged in the protected activity *because* the employee had a reasonable belief that a Title VII violation occurred." *Id.* (emphasis in original) (internal citation omitted).  In her appeal brief, Appellant argues -- without any citation -- that "the causal connection between Plaintiff's complaints and her termination is evident from the fact that her supervisors were aware of her complaints and acted to terminate her shortly after."  Opening Br. at 13.  But Appellant makes no attempt to point to *any* facts to demonstrate that Yoon[5] was aware of her alleged protected

---

she "told him that I felt like I was being treated unfair.  I don't believe I mentioned age or race.  I may or may not have mentioned discrimination." J.A. 697–98.  As the district court rightly determined, this alleged conversation cannot constitute protected activity if Appellant did not complain about discrimination.

[5] Appellant concedes that Yoon was the decisionmaker.  *See* Opening Br. at 9 ("Yoon made the final decision.").

7

activity.

Federal Rule of Appellate Procedure 28(a)(8)(A) requires the argument section of Appellant's brief to contain her "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." And we have explained that where an appellant "fails to include any record citations supporting [her] arguments, [] we consider them waived." *United States v. Miller*, 41 F.4th 302, 313 (4th Cir. 2022); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) ("Failure to comply with the specific dictates of [Rule 28(a)(8)(A)] with respect to a particular claim triggers abandonment of that claim on appeal."). Because Appellant fails to develop any argument on appeal that Yoon had actual knowledge of her alleged protected activity, she has waived that argument. This waiver completely forecloses Appellant's case, and we need not address her pretext arguments.

## B.

Finally, we briefly address Appellant's argument that summary judgment violates the Seventh Amendment by depriving a plaintiff of her right to a jury trial. While a civil plaintiff certainly possesses the right to have a jury resolve factual disputes, summary judgment allows courts to "isolate and dispose of factually unsupported claims or defenses." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Indeed, summary judgment is only appropriate where there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Thus, summary judgment does not usurp the role of the jury or violate the Seventh Amendment. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 (1979) (explaining that "many

8

procedural devices" including directed verdict and summary judgment "have been found not to be inconsistent with the Seventh Amendment" (citing *Galloway v. United States*, 319 U.S. 372, 388–393 (1943) (directed verdict does not violate the Seventh Amendment); *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319–321 (1902) (summary judgment does   not violate the Seventh Amendment))); *see also Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 221 n.12 (4th Cir. 1978) ("[W]here summary judgment is properly granted, no Seventh Amendment issue arises." (citation omitted)).

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.