# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SOUTHERN STATES RACK AND
FIXTURE, INCORPORATED,
                *Plaintiff-Appellant,*

v.

SHERWIN-WILLIAMS COMPANY,
                *Defendant-Appellee,*

and

KELLER RIGGING & CONSTRUCTION
SC, INCORPORATED,
                *Defendant.*

No. 01-2283

Appeal from the United States District Court
for the District of South Carolina, at Aiken.
Joseph F. Anderson, Jr., Chief District Judge.
(CA-99-2726-1)

Argued: December 5, 2002

Decided: January 30, 2003

Before WILKINS and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Motz and Senior Judge Hamilton joined.

---

## COUNSEL

**ARGUED:** Gregory A. Keyser, GETTY, KEYSER & MAYO,
L.L.P., Lexington, Kentucky, for Appellant. Jack Norris Sibley,

HAWKINS & PARNELL, L.L.P., Atlanta, Georgia, for Appellee. **ON BRIEF:** Robert S. Thompson, HAWKINS & PARNELL, L.L.P., Atlanta, Georgia, for Appellee.

---

## OPINION

WILKINS, Circuit Judge:

Southern States Rack and Fixture, Incorporated (Southern States) appeals a judgment of the district court entered in favor of Sherwin-Williams Company (Sherwin-Williams) following a jury trial. Southern States argues that the district court abused its discretion by excluding testimony from one of Southern States' expert witnesses concerning a new opinion that the expert formed during trial. Finding no error, we affirm.

### I.

Southern States brought this action against Sherwin-Williams, claiming that paint Southern States purchased from Sherwin-Williams was defective because it rubbed off of metal racks that Southern States manufactured. In May 2000, Sherwin-Williams responded to a discovery request by Southern States that sought the formula of the paint at issue. Sherwin-Williams indicated that it would produce the formula only if Southern States would sign a confidentiality agreement.

After lengthy negotiations, Southern States and Sherwin-Williams signed a confidentiality agreement in July 2001, and Sherwin-Williams promptly disclosed a document purporting to contain the paint formula. Several days later at a pretrial conference, Southern States asserted that the document Sherwin-Williams had produced did not contain the actual formula of the paint. Though Sherwin-Williams maintained that the formula it had provided was correct, it promised to confirm this fact. On August 3, 2001, Sherwin-Williams sent a letter to Southern States providing the specific chemical composition of each ingredient identified in the earlier document.

Southern States forwarded this information to its expert chemist, Geoffrey Byrnes, who had previously issued a report and been deposed. Based on the new information, Byrnes issued a supplemental report on August 6, 2001.

Trial began on Monday, August 13, 2001. Two days later, Byrnes was called to testify. When Southern States offered him as an expert, Sherwin-Williams conducted voir dire regarding Byrnes' opinions. During this voir dire, Byrnes and Southern States' counsel disclosed —for the first time—that two days earlier, Byrnes had formed a new, third opinion, and had communicated that opinion to Southern States' counsel.[1] Specifically, Byrnes stated that he now believed that certain components of the paint were incompatible, causing it to rub off. Other than a passing reference to "the nature of the paint" during his deposition, J.A. 972, Byrnes had not previously expressed any opinion that the failure of the paint was caused by incompatible ingredients. Though Byrnes' earlier opinions were based on the composition and physical properties of the paint, those opinions apparently focused on the behavior of the paint when applied in a particular manner, not the compatibility of its ingredients.

Byrnes also stated that his new opinion was based in part on tests he conducted in response to deposition testimony by one of Sherwin-Williams' experts, Dr. Bernard Appleman. Though Appleman had been deposed in March 2001, Byrnes claimed that he had not received a copy of the deposition and exhibits until approximately two weeks before his trial testimony. Still, Byrnes acknowledged that he "didn't

---

[1]Southern States claims that the information Byrnes communicated to counsel on the Monday evening of trial week was, at that point, merely a "hypothesis." Br. for Plaintiff-Appellant at 6. According to Southern States, Byrnes tested that hypothesis the following day, and he confirmed his new "opinion" to counsel Tuesday night. *Id.* However, Southern States also made this argument to the district court in its motion for a new trial, and the district court apparently did not credit it, finding that Byrnes' new opinion was "formulated on the Monday the trial began." J.A. 1591. Indeed, after Byrnes disclosed his new opinion during voir dire, Southern States' counsel repeatedly stated to the court that Byrnes had communicated the new opinion to counsel on Monday. Given these admissions, we will not disturb the finding of the district court that Byrnes formulated his new opinion that Monday.

get around to reading" these materials thoroughly until the weekend before trial. *Id.* at 724. In addition, counsel for Southern States asserted that counsel's failure to disclose Byrnes' new opinion when he learned of it two days earlier was due to "the heat of a trial." *Id.* at 739-40.

On Sherwin-Williams' motion, the district court excluded Byrnes' third opinion due to Southern States' failure to timely disclose it. The court allowed Byrnes to testify regarding opinions he had expressed during his deposition and in his August 6 supplemental report. After the close of evidence, the jury returned a verdict for Sherwin-Williams.

Southern States then moved for a new trial, arguing that the district court erred in excluding Byrnes' third opinion, and alternatively, that this opinion constituted newly discovered evidence. The district court held that Byrnes' third opinion was properly excluded under Fed. R. Civ. P. 37(c)(1), which provides for the exclusion of evidence that is not disclosed in accordance with Fed. R. Civ. P. 26, including supplemental disclosures relating to experts. Applying a five-factor test discussed in *Rambus, Inc. v. Infineon Technologies AG*, 145 F. Supp. 2d 721 (E.D. Va. 2001), the district court concluded that "Byrnes' third expert opinion, formulated on the day trial began and not disclosed to defense counsel until defense counsel conducted *voir dire* of . . . Byrnes on the third day of trial, should have been excluded." J.A. 1592. Thus, the district court denied Southern States' motion for a new trial.

## II.

We review the imposition of discovery sanctions for abuse of discretion. *See Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 n.10 (4th Cir. 2002); *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("[W]e give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)."). As explained below, we conclude that the district court did not abuse its discretion in excluding Byrnes' third opinion due to Southern States' failure to timely disclose it. However, because of a dispute regarding the proper standards for

excluding evidence under Rule 37(c)(1), we will first address this issue.

## A.

### 1.

In relevant part, Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed."[2] Of importance here, Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony when the

---

[2]In its entirety, Rule 37(c)(1) reads:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) [relating to failure to comply with discovery orders] and may include informing the jury of the failure to make the disclosure.

The Rule 37(c) advisory committee notes emphasize that the "automatic sanction" of exclusion "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." Fed. R. Civ. P. 37(c) advisory committee note (1993). The alternative sanctions referenced in the rule are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party. *See* 7 James Wm. Moore et al., *Moore's Federal Practice* §§ 37.60[2][b], 37.61 (3d ed. 2002). This is because "[p]reclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party." Fed. R. Civ. P. 37(c) advisory committee note (1993).

party learns of new information. If the party fails to do so, the court may exclude any new opinion offered by the expert. *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999).

The language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is "substantial[ly] justifi[ed]," and (2) when the nondisclosure is "harmless." Here, in concluding that Byrnes' undisclosed third opinion should be excluded, the district court applied the following five-factor test for determining whether nondisclosure of evidence is substantially justified or harmless: "'(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.'" *Rambus*, 145 F. Supp. 2d at 726 (quoting *Burlington Ins. Co. v. Shipp*, 215 F.3d 1317, 2000 WL 620307, at *4 (4th Cir. May 15, 2000) (per curiam) (unpublished table decision)).[3]

Southern States argues that the district court erred by excluding Byrnes' third opinion in the absence of any finding that Southern States acted in bad faith.[4] We find Southern States' argument unavailing. Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules. While Rule 37(c)(1) requires the nondisclosure to be "without substantial justification" and harmful,

---

[3]*Rambus* noted the discrepancy between *Burlington Insurance* and another unpublished decision of this court addressing the standards for excluding evidence under Rule 37(c)(1). *See Tritchler v. Consolidation Coal Co.*, 91 F.3d 134, 1996 WL 379706, at *2 (4th Cir. June 28, 1996) (per curiam) (unpublished table decision) (stating that "[g]enerally, preclusion is considered a drastic remedy, and it is not imposed unless the party's conduct is in bad faith or callous disregard of the discovery rules"). However, *Rambus* concluded that "[n]otwithstanding *Tritchler*, the approach of *Burlington Insurance*, a more recent decision, more closely tracks the plain language of the rule; is consonant with its purpose; and is harmonious with the approaches to Rule 37(c)(1) taken in other circuits." *Rambus*, 145 F. Supp. 2d at 727.

[4]The district court stopped short of making a finding of bad faith.

neither of these requirements suggests that the nondisclosing party must act in bad faith or otherwise culpably.

In addition, excluding evidence only when the nondisclosing party acted in bad faith would undermine the basic purpose of Rule 37(c)(1): preventing surprise and prejudice to the opposing party, *see Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992) (noting that "the focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure"). And, requiring proof that the nondisclosing party acted in bad faith would improperly shift the burden of proof away from that party on the exclusion issue. *See Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 37(c)(1)] was either justified or harmless . . . ."); *accord Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

Further, we believe that the five factors articulated in *Rambus* are helpful in determining whether a party's nondisclosure of evidence was substantially justified or harmless. Four of these factors—surprise to the opposing party, ability to cure that surprise, disruption of the trial, and importance of the evidence—relate mainly to the harmlessness exception, while the remaining factor—explanation for the nondisclosure—relates primarily to the substantial justification exception. We therefore hold that in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

### 2.

We recognize that two published opinions of this court have stated that in "determining what sanctions to impose under Rule 37," a district court must consider four factors: "(1) whether the non-complying

party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998); *accord Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc), *cert. denied*, 122 S. Ct. 1537 (2002), *and cert. denied*, 122 S. Ct. 1538 (2002). While the broad language of these decisions suggests that a court must consider these four factors as part of any sanctions analysis under Rule 37, neither of these cases addressed exclusion of undisclosed evidence under Rule 37(c)(1).

In *Anderson*, we affirmed a default judgment sanction against a party that repeatedly failed to comply with discovery orders requiring it to produce requested documents—violations governed by Fed. R. Civ. P. 37(b). *See Anderson*, 155 F.3d at 503-05. In *Belk*, we affirmed a sanction ordering a party that failed to timely supplement its answers to interrogatories seeking a list of trial witnesses, as required by court order, to pay fees and expenses for deposing its witnesses. *See Belk*, 269 F.3d at 347-48. Though quoting the four-factor test from *Anderson*, *Belk* did not specify which part of Rule 37 was at issue, and the opinion could be construed to implicate both Rule 37(c)(1) and Rule 37(b). *See id.* at 348. Because the analysis in *Belk* focused mainly on the party's violation of a district court order, *see id.* (referring to "the district court's command to supplement interrogatories" and "non-compliance with the district court's orders"), we conclude that the sanction was imposed pursuant to Rule 37(b).

In contrast to Rule 37(c)(1)—which generally requires exclusion of evidence that a party seeks to offer but has failed to disclose, *see supra* note 2—Rule 37(b) provides district courts with greater discretion in selecting one or more appropriate sanctions. *See* Fed. R. Civ. P. 37(b)(2) (stating that when parties fail to obey discovery orders, courts "may make such orders in regard to the failure as are just," and listing several possible sanctions). Thus, while the exclusion analysis under Rule 37(c)(1) is limited by the specific language of that provision, Rule 37(b) allows district courts to consider a broader range of factors, including bad faith, in determining which sanction(s) to impose.

For this reason, the four-factor test recited in *Anderson* and *Belk*, which includes bad faith, does not control the determination of whether to exclude evidence under Rule 37(c)(1). Indeed, the most recent published decision of this court applying Rule 37(c)(1) did not consider whether the nondisclosing party acted in bad faith, but instead focused solely on whether the failure to disclose was substantially justified or harmless. *See Nelson-Salabes, Inc.*, 284 F.3d at 513 n.10 (affirming exclusion of damages testimony when party failed to properly supplement discovery).

We also acknowledge that other circuits interpreting Rule 37(c)(1) apply various tests that either do or do not include bad faith as a consideration. *Compare Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (applying four-factor test including bad faith or willfulness), *and Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (same), *with Yeti by Molly Ltd.*, 259 F.3d at 1106 ("[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."), *and United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998) (applying four-factor test *not* including bad faith or willfulness). Even in circuits where bad faith is an explicit factor in the exclusion analysis, it is not a prerequisite for exclusion. *See Nicholas*, 227 F.3d at 148; *Woodworker's Supply*, 170 F.3d at 993. For the reasons stated above, we decline to consider bad faith as a separate factor in our exclusion analysis, although under some circumstances, it might be relevant to the fifth factor of our test—the nondisclosing party's explanation for its failure to disclose evidence.

### B.

Because the district court here properly relied on the five factors discussed above in deciding the exclusion issue, we now turn to the application of these factors. The district court found that Sherwin-Williams was surprised by Byrnes' third opinion, because both at his deposition and in his August 6, 2001 supplemental report, Byrnes indicated that he had completed his opinions. In addition, the court explained that Sherwin-Williams was unable to cure this surprise. Noting that "the ability to simply cross-examine an expert concerning a new opinion at trial is not the ability to cure," the court emphasized

that "rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts. Such was not possible here." J.A. 1593. The district court also found that granting a continuance to accommodate Byrnes' third opinion would have significantly disrupted the trial, because "witnesses from distant places had testified and if the case were continued and tried again, much of the parties' trial preparation would be rendered obsolete." *Id.*

Regarding Southern States' explanation for Byrnes' undisclosed opinion—alleged delays by Sherwin-Williams in producing the paint formula—the court explained that Southern States "cannot escape that it failed to file a motion to compel twenty days after it knew Sherwin-Williams would not produce the formula." *Id.* More important to the district court, however, Southern States could not "explain why it did not supplement its discovery responses when it knew of . . . Byrnes' new, third opinion formed on the Monday the trial began." *Id.* Finally, the court recognized that Byrnes' new opinion concerning an alleged defect in the paint formula was important evidence. However, the court explained that "this factor must be viewed from the perspective of both parties": "The fact that the expert's testimony regarding the paint formula might have been helpful to [Southern States'] case in the eyes of the jury also points out why it should have been disclosed in a timely manner to [Sherwin-Williams]." *Id.* at 1593-94.

We believe that the district court correctly determined that a balancing of the five factors discussed above weighed in favor of excluding Byrnes' third opinion. Thus, the district court did not abuse its discretion in excluding this opinion based on Rule 37(c)(1).[5]

---

[5]We also reject Southern States' claim that the district court should have ordered a new trial because Byrnes' third opinion constituted newly discovered evidence. Because Southern States learned of this evidence *during* trial, it cannot be considered "newly discovered" for purposes of a *post*-trial motion. *See Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989). Thus, the district court did not abuse its discretion in denying Southern States' motion for a new trial. *See Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001).

## III.

For the reasons set forth above, we affirm the judgment of the district court.

*AFFIRMED*