**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 25-1534**

─────────────

DEQUE SYSTEMS INC.,

       Plaintiff – Appellant,

  v.

BROWSERSTACK, INC.; BROWSERSTACK SOFTWARE PVT, LTD,

       Defendants – Appellees,

  and

BROWSERSTACK LIMITED,

       Defendant.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, Senior District Judge. (1:24-cv-00217-AJT-WEF)

─────────────

Argued: March 18, 2026                      Decided: June 5, 2026

─────────────

Before AGEE, Circuit Judge, and TRAXLER and FLOYD, Senior Circuit Judges.

─────────────

Affirmed by published opinion. Judge Agee wrote the opinion, in which Senior Judge Traxler and Senior Judge Floyd joined.

─────────────

**ARGUED:** Timothy Allen Diemer, JACOBS & DIEMER, P.C., Detroit, Michigan, for Appellant. Carolyn C. Chang, MARTON RIBERA SCHUMANN & CHANG LLP, San Francisco, California, for Appellees. **ON BRIEF:** Courtney E. Evans, JACOBS AND

DIEMER, P.C., Detroit, Michigan; Stephen P. Dunn, Troy, Michigan, Justin P. Bagdady, BODMAN PLC, Ann Arbor, Michigan, for Appellant.  Roman Lifson, Belinda D. Jones, CHRISTIAN & BARTON, LLP, Richmond, Virginia; Ryan J. Marton, MARTON RIBERA SCHUMANN & CHANG LLP, San Francisco, California, for Appellees.

———————

AGEE, Circuit Judge:

Deque Systems Inc. ("Deque") and BrowserStack, Inc. ("BrowserStack") are competing software companies in the accessibility testing market. Deque sued BrowserStack, alleging that it was infringing Deque's copyrighted materials. After Deque repeatedly failed to disclose its damages calculations and evidence of the same, the district court excluded evidence of Deque's damages as a sanction under Federal Rule of Civil Procedure 37(c)(1). In turn, the court granted summary judgment for BrowserStack on all claims. Deque now appeals both decisions. Finding no error, we affirm the district court's judgment in full.

I.

A.

The salient facts are largely undisputed. Deque is a web accessibility software and services company that develops and sells software to help businesses ensure their websites are accessible to those with visual and hearing impairments. Two of its products are relevant here: (1) a website testing program known as DevTools, and (2) a proprietary rules engine ("Rules Help Pages"). Deque spent numerous years and considerable money developing DevTools, which website developers can install as a browser extension to test webpage accessibility. DevTools automatically flags accessibility issues and directs the user to the Rules Help Pages, which then explain potential solutions. Deque registered multiple versions of DevTools and the Rules Help Pages with the United States Copyright Office.

3

A user can access a free version of DevTools or purchase a "Pro" version that includes more features. To access either, a user must agree to Deque's "Software License Terms," which prohibit the user from copying or replicating DevTool's source code. *See* J.A. 923 (providing that a user "may not, and may not allow any third party to: [d]ecompile, disassemble, decrypt, or reverse engineer [DevTools] or attempt to derive the source code for any part of [DevTools]; . . . [or] [m]odify or create derivative works of [DevTools]"); *see also* J.A. 931–32. In addition, creating an account on Deque's website—which a user must do to access the Rules Help Pages—requires agreeing to Deque's Terms of Use. Those provide that "[t]he information on [Deque's] website is protected by copyright. Except as specifically permitted, no portion of this website may be distributed or reproduced by any means, or in any form, without Deque's prior written permission." J.A. 939.

## B.

BrowserStack sought to enter the accessibility testing market sometime in 2021. Internal BrowserStack documents reflect that, initially, the company sought to either acquire Deque or "build on top of" Deque's products. J.A. 1738. Acting on that desire, BrowserStack approached Deque about a potential acquisition, which never came to pass. Instead, beginning in late 2021, more than 100 BrowserStack employees created accounts to access DevTools—thereby agreeing to Deque's Software License Terms and Terms of Use. At least seven accounts had Pro licenses.

In 2022, BrowserStack rolled out its Accessibility Toolkit, which, like DevTools, was available as a browser extension. After its launch, BrowserStack advertised the

4

Accessibility Toolkit on its website, including a side-by-side comparison to DevTools. That comparison represented that the Accessibility Toolkit is "5x faster" than Deque's products and that Deque's products lacked certain tools that were available with the Accessibility Toolkit. J.A. 1237.

C.

1.

In February 2024, Deque sued BrowserStack, alleging infringement under the Copyright Act, 17 U.S.C. § 501(a); false advertising under the Lanham Act, 15 U.S.C. § 1125, and Va. Code Ann § 18.2-216; breach of contract; and unjust enrichment. Deque's theory of liability was that BrowserStack violated the Software License Terms by reverse engineering DevTools' source code, which it then used to develop the Accessibility Toolkit. In other words, that BrowserStack's Accessibility Toolkit, i.e., the "Infringing Software," infringed Deque's "Copyrighted Works," which include sixteen versions of DevTools released between 2018 and 2021. According to Deque, BrowserStack copied the Rules Help Pages to create its own version of the same. Deque also alleged that BrowserStack made false statements in the advertisements on its website.

In its complaint, Deque asked the court to: (1) enjoin BrowserStack from further copyright infringement and false advertising; (2) order an audit of BrowserStack's use of DevTools; and (3) award Deque: (a) actual damages, (b) lost profits, (c) monetary relief for the damage to its goodwill and reputation, (d) the disgorgement of BrowserStack's profits obtained from the copyright infringement, and (e) its attorney's fees and costs.

5

2.

The district court entered a Rule 16(b) scheduling order that established deadlines for the parties to exchange initial and expert disclosures (June 7 and August 9, 2024, respectively) and set a discovery cut-off date (October 11, 2024). Discovery opened on April 18, 2024. Deque purported to serve its Rule 26(a)(1) initial disclosures on the June 7 deadline but didn't provide a "computation of each category of damages claimed" or reference or include any documents or evidence to support its damages claim as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).[1]

A couple of weeks later (June 21), BrowserStack served interrogatories, including one that asked Deque to identify the categories and calculations of its claimed damages. In its response submitted over a month later, Deque again failed to disclose that information, stating instead that it "intend[ed] to seek all available damages" and that "the calculations of the amount of damages that it seeks to recover, and all facts and opinions supporting such amounts, are incomplete at this time[.]" J.A. 484–85. That is, Deque proffered it

---

[1] Deque's disclosure statement simply stated:

Plaintiff seeks its lost profits and/or Defendants' revenue attributable to Defendants' copyright infringement, false advertising and breach of contract. Alternatively, Plaintiff seeks damages in the amount that Defendants' have been unjustly enriched through their unlawful actions. Plaintiff further seeks enhanced damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

Plaintiff will make available to Defendants the documents upon which it bases its computation of losses under Fed. R. Civ. P. 34 as discovery proceeds, subject to all appropriate reservations, objections, privileges, protections, or immunities from disclosure.

J.A. 151.

6

would defer providing its damages disclosures until "a future time . . . either [in] expert reports or otherwise." J.A. 485. Although Deque supplemented its interrogatory responses in August and October, it didn't remedy the prior insufficient responses. When Deque's deadline to disclose its Rule 26(a)(2) expert reports came on August 9, it didn't serve anything, nor did it move for more time to amend earlier submissions.

Sometime in early September, Deque retained new counsel. On September 6—four weeks after Deque's Rule 26(a)(2) disclosure deadlines had lapsed—Deque identified Michael Kahaian as its damages expert. Even so, it didn't provide Kahaian's expert report or otherwise attempt to supplement its Rule 26(a)(1)(A)(iii) damages disclosure.

Instead, on September 20—now more than five months after discovery began, six weeks after its Rule 26(a)(2) deadline, and around three weeks before discovery was to close—Deque moved for an extension of time to serve Kahaian's report. For support, it argued for the first time that BrowserStack hadn't produced the necessary damages-related documents. So it simultaneously moved to compel BrowserStack to produce those documents.[2]

On September 23, the deadline for BrowserStack's expert disclosures, BrowserStack served its expert damages report in which its expert opined that if Deque suffered any damages in the categories it claimed, they were between $3,000 and $67,149.

---

[2] A brief aside on BrowserStack's discovery productions. Deque made its first and only request for production on May 9. BrowserStack timely objected on May 24 and responded on June 10, and for months, Deque took no issue with either. On August 8, BrowserStack produced documents that included financial data related to the Accessibility Toolkit. At a motions hearing, the magistrate judge found that BrowserStack had "provided [Deque] with the discovery necessary to reasonably calculate [its] damages." J.A. 607.

On October 8, the deadline for rebuttal expert reports, Deque served Kahaian's initial affirmative expert report although designating it as a rebuttal. This report was two months late and served three days before discovery closed. In the report, Deque shed light on its damages calculations for the first time, estimating its damages to be upwards of $30 million.

Discovery closed on October 11.

3.

In December, BrowserStack moved for summary judgment on both liability and damages.[3] It argued that because Deque didn't timely disclose its damages calculations under Federal Rule of Civil Procedure 26(a), the district court should exclude Deque's damages evidence under Rule 37(c)(1) and the factors for applying that rule set out in S*outhern States Rack & Fixture, Inc. v. Sherwinn-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).[4] BrowserStack then argued that Deque couldn't maintain any claim for injunctive relief, submitting a declaration from its Product Manager in which he swore that

---

[3] Deque cross-moved for partial summary judgment, arguing that there was no dispute of material fact as to BrowserStack's liability on all claims and seeking to reserve the question of damages for trial. The district court denied Deque's motion, and that decision isn't before us on appeal.

[4] *Cf.* Fed. R. Civ. P. 37(c)(1) (providing that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless"); *S. States*, 318 F.3d at 597 (holding that to determine whether nondisclosure was "substantially justified or harmless" under Rule 37(c)(1), "a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence").

BrowserStack had removed the allegedly infringing content from the then-current Accessibility Toolkit and took down the alleged false advertisement from its website. So, according to BrowserStack, because there was no evidence of ongoing wrongdoing, there was no basis for an injunction.

Deque opposed BrowserStack's summary judgment motion, arguing that Kahaian's "rebuttal" report served as a sufficient disclosure of its damages. However, Deque didn't challenge the applicability of Rule 37(c)(1) or *Southern States*. Responding to BrowserStack's attack on its request for injunctive relief, Deque cursorily argued that there was a genuine dispute of fact on this issue without proffering any evidence to rebut the Product Manager's declaration.

Along with its opposition to BrowserStack's summary judgment motion, Deque served—out of an "abundance of caution" and nearly two months after discovery closed—a second supplement to its Rule 26(a)(1) initial disclosures, which disclosed for the first time its affirmative damages claims. J.A. 1023. It expounded on and calculated the damages it sought: disgorgement of BrowserStack's U.S. revenues from the Accessibility Toolkit, its lost profits, and BrowserStack's avoided development costs (that is, the amount of money it *didn't* have to spend to develop the Accessibility Toolkit because it infringed on DevTools).

While its summary judgment motion was pending, BrowserStack filed sixteen motions in limine, one of which asked the court to exclude all evidence of Deque's damages claims under Rule 37(c)(1) and *Southern States*. Deque's opposition to that motion argued that exclusion under Rule 37(c)(1) wasn't appropriate because its late disclosure was

9

substantially justified and harmless. Once again, Deque didn't mount any challenge to the framework (Rule 37(c)(1) and *Southern States*) that the court should apply to determine whether exclusion was warranted.

Following two motions hearings, the district court issued an opinion and order granting BrowserStack's motion in limine and motion for summary judgment and denying Deque's motion for partial summary judgment. As a result, the court entered judgment for BrowserStack on all counts.

Beginning with the motion in limine, the district court observed that "Deque clearly and repeatedly failed to disclose adequately its damages claims in its initial disclosures, responses to BrowserStack's damages interrogatories, or expert reports[.]" J.A. 1241. Applying *Southern States*, the court concluded that exclusion was appropriate. The court highlighted that BrowserStack didn't know any aspect of Deque's damages claim until it received Kahaian's rebuttal report three days before discovery closed, and that the belated report wasn't effective notice because affirmative evidence can't be provided in a rebuttal report. The court also found that Deque's nondisclosure couldn't be cured without reopening discovery so that BrowserStack could supplement its expert disclosures and depose Kahaian, and that such a delay would disrupt its docket. The district court then granted BrowserStack's motion to exclude Deque's damages evidence by concluding:

> Deque was aware of its discovery deadlines, repeatedly missed those deadlines, attempted to circumvent the deadlines through untimely supplemental disclosures and rebuttal reports not permitted for the purpose now relied upon by Deque, and those errors were not harmless or substantially justified.

J.A. 1248.

10

Turning to the motions for summary judgment, the district court stated:

> Deque acknowledged that BrowserStack is no longer infringing its copyrights, that BrowserStack's comparative advertisement had been taken down, that Deque has abandoned its claims for injunctive relief and is seeking only monetary damages based on the disgorgement of BrowserStack's revenue, lost profits, and avoided development costs for all five counts.

J.A. 1240 n.2. Because the district court excluded Deque's evidence of monetary damages, and "such evidence is essential to all five [of Deque's] claims[,]" it then concluded that Deque's claims couldn't survive summary judgment. J.A. 1249.

4.

Deque moved for reconsideration under Rule 59(e), arguing that (1) it wasn't required to prove damages to overcome summary judgment because its complaint had sought not only damages, but also declaratory and injunctive relief, nominal damages, and attorneys' fees; (2) the court's grant of summary judgment to BrowserStack operated as a terminating sanction, and thus should've been considered under Rule 37(b)(2), which requires a finding of bad faith; (3) it could still prove damages through other evidence that had not been excluded; and (4) the district court's summary judgment decision resulted in a manifest injustice.

The district court denied Deque's motion for reconsideration. It first explained that "Deque clearly failed to present evidence sufficient to warrant injunctive relief," as it offered "no evidence of ongoing infringement[.]" J.A. 1359. As for declaratory relief, the court found that Deque didn't plead such a request, nor did it raise it at any point in pre-trial proceedings. The court similarly found that Deque waived any claim for nominal

11

damages, as it never raised one. The court then clarified that its summary judgment decision wasn't a sanction; instead, it explained that it had engaged in a two-step bifurcated analysis, first excluding Deque's damages evidence for noncompliance with Rule 26(a) and then and separately determining in a second step that BrowserStack was entitled to summary judgment based on the remaining evidence in the record. Last, the district court clarified that its sanctions decision applied to *all* evidence of damages for lost profits, disgorgement of revenue, and development costs, regardless of the source. That meant that Deque wasn't free to "present at trial some other amount of never disclosed damages[.]" J.A. 1358.

Deque timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

II.

Deque challenges the district court's exclusion of its damages evidence and the subsequent grant of BrowserStack's motion for summary judgment. We address these issues in turn.

A.

We begin with the district court's exclusion of Deque's damages evidence as a sanction under Rule 37(c)(1), which we review for abuse of discretion. *See S. States*, 318 F.3d at 595.

1.

Federal Rule of Civil Procedure 26(a) requires a party to make initial disclosures "without awaiting a discovery request[.]" Fed. R. Civ. P. 26(a)(1)(A). A "major purpose"

12

of Rule 26(a) "is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information." Fed. R. Civ. P. 26(a) advisory committee note (1993).

Two of those initial disclosures are relevant here. First, a party must provide "a computation of each category of damages" that it is claiming and "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii). It must make such a disclosure within 14 days of the parties' Rule 26(f) conference "unless a different time is set by stipulation or court order[.]" Fed. R. Civ. P. 26(a)(1)(C).

Second, a party must "disclose to the other parties the identity of any witness it may use at trial to present" expert testimony. Fed. R. Civ. P. 26(a)(2)(A). If an expert witness is "retained or specially employed to provide expert testimony in the case," the disclosure "must be accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). The disclosure must be made "at the time[] and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Rule 37 gives teeth to Rule 26's disclosure requirements by forbidding the use "on a motion, at a hearing, or at a trial" of any information required to be disclosed under Rule 26(a) that isn't properly disclosed, "unless the failure was substantially justified or is harmless."[5] Fed. R. Civ. P. 37(c)(1).

---

[5] Rule 37(c)(1) goes on to provide that, "[i]n addition to or instead of [exclusion], the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions."

13

Deque indisputably failed to comply with its Rule 26(a) obligations. That Rule required it to provide a "computation of each category of damages" it claimed, and under the discovery deadlines, it had to submit its documents and evidence in support of the same by June 7. But it didn't do so until December 6, well after discovery had closed.[6] And when BrowserStack sought clarification on what damages Deque was seeking and how it would calculate those damages through interrogatories in July, August, *and* October 2024, Deque repeatedly failed to make any disclosure. Instead, it offered cursory statements that deferred any responsive answers. Likewise, Deque blew through its August 9 Rule 26(a)(2) expert disclosure deadline, as Kahaian's damages report wasn't provided to BrowserStack until October 8. Thus, we have no trouble concluding that Deque failed to comply with Rule 26(a)'s disclosure mandate.

And neither does Deque. *See* Opening Br. 2 ("Deque's prior counsel, admittedly, failed to timely provide a damages calculation as required by Rule 26(a)(1)(A)(iii) and did not service an affirmative expert report on damages by the District Court's deadline."). To the extent Deque argues that Kahaian's report was timely as it was disclosed to rebut BrowserStack's damages expert, we disagree. A rebuttal report is just that—a report offered to "rebut evidence on the same subject matter identified by another party[.]" Fed.

---

[6] Rule 26(e) requires a party to supplement its initial disclosures "in a *timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the *additional or corrective* information has not otherwise been known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). It can hardly be said that Deque's second supplement was made in "a timely manner," considering that it was served in December 2024—nearly six months after its initial disclosure deadline—and based on financial documents Deque obtained through discovery as early as August 2024 and then updated in September 2024.

R. Civ. P. 26(a)(2)(D)(ii). It's not a means to skirt a party's *initial* disclosure obligations for issues on which it bears an affirmative burden of proof.

The disputed question, then, is whether the district court's exclusion of Deque's evidence of damages (lost profits, disgorgement of revenue, and avoided development costs) was an abuse of discretion. Under Rule 37(c)(1), exclusion was proper—indeed, mandated—so long as Deque's noncompliance with Rule 26(a) was neither substantially justified nor harmless. *See Wilkins v. Montgomery*, 751 F.3d 214, 221–222 (4th Cir. 2014) (citing Fed. R. Civ. P. 37(c)(1)).

To determine whether a party's noncompliance was "substantially justified or [] harmless[,]" Fed. R. Civ. P. 37(c)(1), district courts should turn to our familiar *Southern States* factors and "consider the surprise to the opposing party, the ability to cure that surprise, the disruption to the trial, the importance of the evidence, and the explanation for nondisclosure." *Clear Touch Interactive, Inc. v. Ockers Co.*, 171 F.4th 715, 731 (4th Cir. 2026) (citing *S. States*, 318 F.3d at 597). The party facing sanctions bears the burden of establishing that its nondisclosure was substantially justified or harmless. *Wilkins*, 751 F.3d at 222. Because the failure to provide initial disclosures "unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case[,] . . . we give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278–79 (4th Cir. 2005) (cleaned up).

15

We discern no abuse of discretion in the district court's thorough consideration of these factors and its attendant conclusion that Deque's noncompliance wasn't substantially justified or harmless.

First, surprise to BrowserStack. Deque acknowledges that it "failed to timely . . . serve an affirmative expert report on damages[.]" Opening Br. 2. But it maintains that BrowserStack couldn't have been surprised by "much of Deque's damages evidence," because it "was based on black letter copyright law" and BrowserStack was at least "aware of the types of damages Deque was seeking in this case." *Id.* at 32. Simply put, whether BrowserStack should've known that Deque was seeking damages theoretically available in copyright infringement cases is beside the point. As the district court emphasized, throughout the case, it wasn't clear what damages Deque was seeking. Instead, Deque's proffered damages became clear only three days before discovery closed when it served Kahaian's rebuttal expert report, which disclosed for the first time that Deque's damages were as high as $30 million.

Second and third, BrowserStack's ability to cure that surprise and any disruption to trial. Deque argues that all that was needed was a "brief continuance of the trial schedule" and a limited reopening of discovery so BrowserStack could depose Kahaian and respond to Deque's new claims. *Id.* The district court rejected this argument, concluding that the additional discovery that would be necessary meant that trial would need to be postponed "for a significant period of time," which would cause "disruption to the Court's docket generally[.]" J.A. 1246–47. Deque has offered, and we have found, no reason to disturb that conclusion, which rests soundly within the province of the district court's assessment.

16

*Cf. Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *see also Hoffman v. Constr. Protective Servs., Inc.,* 541 F.3d 1175, 1179–80 (9th Cir. 2008) ("Later disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless.").[7]

Fourth, the importance of the evidence. No doubt, as the district court concluded, "the evidence at issue is important[.]" J.A. 1247. But this factor "must be viewed from the perspective of both parties." *S. States*, 318 F.3d at 598 (cleaned up). "To that end, the more important the evidence, the more important it is for the proponent to disclose the evidence in a timely manner because it is more likely to prejudice the opposing party." *Benjamin v.*

---

[7] Deque invokes this Court's decision in *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102 (4th Cir. 2021), to argue that the district court abused its discretion by not simply delaying trial to cure any prejudice that may have befallen BrowserStack because of any delayed disclosure. But *Foodbuy* is inapposite. There, a party did not disclose its calculation of damages or how it calculated them until the third day of trial. 987 F.3d at 112. The "surprised" party, although previously having moved to exclude that damages evidence, instead asked the district court to allow its rebuttal expert to testify about her calculation of damages. *Id.* The district court proposed adjourning trial for one week, which the surprised party stated, "sounded fair and reasonable." *Id.* at 113. On appeal, this Court held that permitting the one-week adjournment was not an abuse of discretion, particularly in view of the surprised party's consent. *See id.* at 117–18. *Foodbuy* thus merely reaffirms the long-standing rule that a district court has discretion when ruling on sanctions under Rule 37(c)(1). *See Saudi*, 427 F.3d at 278–79. It doesn't support the inverse proposition, as Deque argues, that a district court somehow abuses its discretion when it reaches a different result. Put differently, just because one route (relief apart from the exclusion of evidence in one case) is not an abuse of discretion does not mean that another (relief in the form of exclusion of evidence in a different case) necessarily is.

17

*Sparks*, 986 F.3d 332, 343 (4th Cir. 2021) (cleaned up). Through that lens, we cannot say that the district court erred in concluding that, "[g]iven the importance of [Deque's damages evidence], requiring BrowserStack to proceed to trial under the current posture of the case would impose substantial prejudice." J.A. 1247.

Last, Deque's explanation for its noncompliance. Deque hasn't offered any justification, sufficient or otherwise, for its failure to disclose its damages calculations and the underlying evidence.

On these facts, the district court didn't abuse its discretion in excluding Deque's damages evidence under Rule 37(c)(1).

2.

Objecting to this outcome, Deque argues that the district court's exclusion of its damages evidence "carried the force of dismissal." Opening Br. 21. That is, the district court granted summary judgment to BrowserStack *because* it excluded Deque's damages evidence. In that event, Deque argues, the district court was required to consider the four factors we set forth in *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503 (4th Cir. 1977), which include whether the noncomplying party acted in bad faith and the effectiveness of less drastic sanctions.[8] Because the district court's analysis didn't include those considerations, Deque asks us to vacate the sanctions decision and remand for the district court to apply the *Wilson* factors.

---

[8] The other *Wilson* factors are prejudice to the party in favor of sanctions and the need for deterrence of the particular sort of noncompliance. 561 F.2d at 504.

There's one main issue for Deque: *Wilson* is limited to Rule 37(b)(2)(A), which provides district courts with a menu of potential sanctions when a party fails to obey a discovery order, such as "rendering a default judgment against the disobedient party[.]" Fed. R. Civ. P. 37(b)(2)(A)(vi). With little to no argument why, Deque urges us to extend *Wilson* to sanctions under Rule 37(c)(1) when they "carry the force of dismissal." Opening Br. 21. We have no occasion to decide that question today for several reasons.

First, Deque waived this argument. In their summary judgment briefing, both Deque and BrowserStack analyzed whether the district court should exclude Deque's damages evidence only under Rule 37(c)(1) and the *Southern States* factors. Thus, in its district-court filings, and at the later motions hearings, Deque never challenged the application of Rule 37(c)(1) and *Southern States*. It wasn't until Deque moved for reconsideration under Rule 59(e) that Deque first made the argument that it now makes on appeal: that Rule 37(b)(2) and *Wilson* supply the proper framework. It's well established that an issue raised for the first time in a Rule 59(e) motion "is not preserved for appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness *and* consider the issue." *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) (emphasis added).

Deque concedes it didn't raise its *Wilson* argument until its Rule 59(e) motion but nonetheless argues that it preserved the argument because the district court considered it. Not so. Although the district court mused on the ramifications of Deque's newly raised arguments on reconsideration, it's highly debatable whether it "considered the issue." And in any event, a fair reading of the court's decision doesn't permit the conclusion that it

19

excused Deque's "lack of timeliness." *Id.* In fact, the court's decision reflects the opposite—it knew Deque was raising a new argument, called it out, and didn't analyze the merits of that argument. J.A. 1357 ("[A] Rule 59(e) motion may not be used to simply 'rehash' previously presented contentions, and Deque's positions in this regard are simply reargument of positions considered and rejected by the Court, or never previously made, and provide no new grounds sufficient to justify altering the Court's determination that Deque's damages evidence, as presented in its rebuttal expert report and second supplement to its Rule 26 disclosures, was properly excluded under Rule 37(c)(1)."). Because Deque raised this argument for the first time in a Rule 59(e) motion and the district court didn't excuse its untimeliness, the argument isn't preserved for appellate review.

Second, even if this argument were preserved for our consideration, Deque's argument rests on a faulty assumption. On the facts of this case, the district court's exclusion of Deque's damages evidence did *not* carry the force of dismissal. Correctly read, the district court first undertook the Rule 37(c)(1) analysis and then separately considered whether it was appropriate to grant summary judgment, reviewing the remaining record. Contrary to Deque's assertion, the district court's resolution of the Rule 37(c)(1) question did not *ipso facto* necessitate its resolution of the separate summary judgment determination. But we have more than the district court's original analysis to confirm this understanding: the district court said so itself in denying Deque's Rule 59(e) motion. In that order, the district court made clear that it hadn't granted BrowserStack's motion for summary judgment as a sanction but engaged in a two-step process. It first decided whether exclusion of Deque's damages evidence was appropriate under Rule 37(c)(1) and, after

20

concluding that it was, examined whether summary judgment was warranted based on the rest of the record.

Even more, the district court's exclusion of Deque's damages evidence was not the "but-for cause" of its grant of summary judgment to BrowserStack. At least for its copyright infringement and false advertising claims, Deque sought injunctive relief in addition to monetary damages. As we explain below, summary judgment was appropriate notwithstanding the exclusion of the damages evidence because Deque didn't marshal sufficient evidence at summary judgment to raise a genuine dispute of material fact as to its entitlement to injunctive relief. In other words, Deque's failure to prove its case in all respects *and* the district court's sanctions decision ultimately led to dismissal. Deque is thus wrong that the Rule 37(c)(1) sanction on its own carried the force of dismissal.

Accordingly, we hold that the district court didn't abuse its discretion in excluding Deque's evidence relating to the categories of monetary damages it sought under Rule 37(c)(1).[9]

## B.

We now turn to Deque's contention that even without the excluded damages evidence, its copyright infringement and false advertising claims should have survived summary judgment. Our review of a district court's grant of summary judgment is de novo. *United States v. Stover*, 131 F.4th 199, 202 (4th Cir. 2025). Summary judgment is proper

---

[9] For these reasons, the district court was not required to consider sanctions other than the exclusion of Deque's damages evidence and whether Deque acted in bad faith, as both are only factors for Rule 37(b)(2)(A) sanctions under *Wilson*.

21

when, viewing the evidence in the light most favorable to the nonmoving party, *id.*, there's "no genuine dispute as to any material fact and [the moving party] is entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(a).

Deque argues that the district court erred in concluding that evidence of monetary damages was "essential to all five [of its] claims" because monetary damages are not an essential element of its copyright infringement and false advertising claims, so long as the affected party maintains claims for injunctive and declaratory relief. J.A. 1249. We needn't decide as a matter of law whether that's correct because even assuming that it is, Deque doesn't have viable claims for alternative relief.

At the outset, we agree with the district court that Deque "never requested a declaratory judgment in its [complaint], or during pre-trial proceedings." J.A. 1361. Deque did not seek a declaratory judgment either as a separate claim or a specific request for relief in its complaint, and it wasn't invoked in the summary judgment briefing in the district court. Rather, it appears that Deque's request for declaratory relief was conjured up in its motion to reconsider and then revived on appeal.

Further, any reliance on potential injunctive relief as an alternative to monetary damages likewise fails because Deque offered no evidence of ongoing infringement or potential future infringement or false advertising.[10] *See eBay Inc. v. MercExchange, LLC*,

---

[10] Although not necessary to our disposition, we observe that it's probable Deque abandoned its claim for injunctive relief. *See Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 463 (4th Cir. 2013). In its reconsideration decision, the district court explained that it didn't address injunctive relief in its initial decision because it was under (Continued)

22

547 U.S. 388, 392 (2006); *c.f.* 17 U.S.C. § 502(a) (allowing a court in a copyright infringement case to "grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain* infringement of a copyright" (emphasis added)).

As pled, Deque's copyright infringement claim is that BrowserStack's Accessibility Toolkit v.1.0.0.4 contains code from DevTools v.4.9.0 and a "substantial amount of text copied verbatim from [the] Rules Help Pages[.]" J.A. 83; *see* J.A. 81–84. Yet there were no allegations that the current version of the Accessibility Toolkit contained any such infringing source code. In support of summary judgment on this claim, BrowserStack argued that Deque hadn't proffered evidence of continuing harm and submitted a declaration from its Product Manager who swore that: (1) none of the content that Deque alleged was infringing existed in the then-current version of the Accessibility Toolkit and there were no plans to reuse it; and (2) none of the alleged false statements were on

---

the impression that Deque was no longer seeking such relief. That understanding was based on the following colloquy between the court and Deque's counsel at the motions hearing:

> [The Court]: So are you seeking any equitable relief with respect to the copyright claim beyond damages?

> [Deque's Counsel]: I mean, I think there could be a permanent injunction on that as well, but *at this point it is primarily a damages issue*. I mean, I think that is fair enough, ***yes***.

J.A. 1286 (emphasis added). Deque never argued that its claims would survive summary judgment even if its damages evidence was excluded because it would be entitled to injunctive relief. Nor did it respond to numerous statements from BrowserStack's counsel at the hearing on this purported abandonment. *See, e.g.*, J.A. 1295 ("I think [Deque] conceded here in argument that they're not seeking equitable relief under the copyright statute[.]"). And, immediately after BrowserStack's counsel said, "[s]o there's no remedy . . . no damages, *no injunction*, the case doesn't need to go forward," the district court gave Deque a chance to respond and asked if they had "[a]nything else" to say. *Id.* Nothing more was said.

23

BrowserStack's then-current website. BrowserStack's counsel also submitted a declaration explaining that Deque never reviewed the Accessibility Toolkit's source code, even though BrowserStack made it available for inspection during discovery in July 2024 and followed up with Deque "numerous times" about its opportunity to do so in July and August 2024. J.A. 694 ¶ 3. Deque offered nothing to rebut these representations.

Once BrowserStack asserted at summary judgment that Deque didn't have evidence to support its entitlement to injunctive relief, the burden shifted to Deque to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (cleaned up). To do so, Deque had to go beyond the allegations in the complaint and rely on affidavits, depositions, or other competent evidence at summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Did Deque meet that burden? No. Instead, it simply argued that the district court shouldn't consider the Product Manager's declaration because he "committed infringing acts and has a unique interest in claiming that infringement ceased[,]" J.A. 1002 ¶ 14, and the declaration is "exceedingly unpersuasive[,]" J.A. 1028. This, according to Deque, demonstrated "at [a] minimum a genuine issue of material fact regarding Deque's entitlement to injunctive relief." *Id.* Deque further contends that "[i]t was improper for the District Court to affirmatively deem [the Product Manager]'s statements to be credible and beyond reproach at the summary judgment stage[,]" as "[c]redibility judgments are the province of the jury." Opening Br. 43.

But simply stating that rudimentary principle of civil procedure is of no help to Deque here. BrowserStack's declaration that it offered the then-current version of the

24

Accessibility Toolkit for inspection to Deque went unanswered. Deque could have confirmed for itself whether there was any ongoing infringement; it chose not to do so, or at least never submitted anything in the district court to assert otherwise. And Deque conceded that BrowserStack removed the alleged false advertisement from its website. *See* J.A. 1003 ¶ 18.

Based on the summary judgment record, the only evidence is that an earlier version of the Accessibility Toolkit that Deque alleged contained infringing source code is no longer being sold, the version now being sold isn't infringing, and any alleged false advertisement on BrowserStack's website has been removed. We therefore agree with the district court that Deque failed to offer any competent evidence at summary judgment to raise a genuine dispute of material fact as to any actual or threatened *future* infringement. That showing was necessary for injunctive relief, and the lack thereof is fatal to Deque's claims.[11]

---

[11] Deque's final argument is that summary judgment for BrowserStack was improper because it still could have proven entitlement to (1) disgorgement of BrowserStack's revenues, and (2) monetary damages through testimony from its CEO and other evidence of BrowserStack's revenues from its accessibility products. We reject this argument because that evidence is squarely excluded by the district court's sanctions decision. *See* J.A. 1358 ("[B]ased on [Deque's] late disclosure of the amount of damages in the areas of lost profits, *disgorgement of revenue*, and avoided development costs, those damages were excluded." (emphasis added)); J.A. 1244 ("[T]he five-factor analysis would apply to the three categories of damages that Deque seeks: *disgorgement of revenue*, lost profits, and avoided development costs." (emphasis added)). For that same reason, Deque's Virginia state law attorneys' fees claim fares no better as it's not entitled to attorneys' fees under Virginia's false advertising law without evidence of damages. *See Henry v. R.K. Chevrolet, Inc.*, 254 S.E.2d 66, 67–68 (Va. 1979) (noting that a "loss" is required to obtain relief under Va. Code Ann. § 18.2-216).

Finding no merit to any of Deque's summary-judgment-related arguments on appeal, we hold that the district court didn't err in granting summary judgment to BrowserStack on all of Deque's claims.

## III.

For the reasons discussed, the district court didn't abuse its discretion in excluding Deque's damages evidence under Rule 37(c)(1), nor did it err in granting summary judgment to BrowserStack. Accordingly, the district court's judgment is

*AFFIRMED.*